**Roy C. GRAPHENREED, Employee, Plaintiff-Respondent,**

v.

**FORD MOTOR COMPANY, a corporation, Employer, Defendant-Appellant.**

No. 34330.

Missouri Court of Appeals,
St. Louis District.

May 23, 1972.

Rehearing Denied June 28, 1972.

Luke, Cunliff, Wilson, Herr, Chavaux & McCluggage, St. Louis, for defendant-appellant.

James F. Koester, Kenneth M. Weinstock, St. Louis, for plaintiff-respondent.

BRADY, Chief Judge.

This case involves an appeal from judgment of the circuit court affirming an award of the Industrial Commission for the claimant in the amount of $5,740.00. Ford Motor Company, hereafter referred to as employer, appeals. We affirm.

The employer attacks the judgment of the trial court on two grounds: (1) there was not sufficient competent evidence in the record to warrant the making of the award, § 287.490, 1(4), RSMo., V.A.M.S., and (2) the Commission acted without or in excess of its powers, § 287.490, 1(1), RSMo., V.A.M.S. Since the latter allegation concerns matters outside the actual hearing before the Referee, we will consider it first.

After review, the Industrial Commission issued a final award dated September 2, 1969, affirming the award of the Referee. The final award was signed by Commissioners Presley and Brown with Chairman Butler dissenting in a separate opinion. Thereafter, employer filed a motion to vacate the final award alleging in part that after the award it received an undated order signed by Commissioner Presley purporting to set aside the final award. On September 23, 1969 the Commission entered an order denying the motion to vacate. This order was signed by Chairman Butler (the original dissenter) and Commissioner Brown. Commissioner Presley dissented in a separate opinion.

The parties have not cited, nor were we able to find, any law from this or any other jurisdiction dealing with this unique situation. Employer argues the two dissenting opinions demonstrate that in fact the majority opinion was to reverse the Referee's decision. Thus, employer argues, the final award does not reflect the actual decision and is in excess of the Commission's powers. We cannot agree.

We decline the invitation to speculate as to who changed whose mind. While employer urges that Commissioner Presley by his dissent to the order indicated his opinion was consistent with Chairman Butler's dissent, it is equally plausible to assume that Chairman Butler by denying the motion changed his mind to be consistent with the final award. The final award was properly signed by two commissioners thus constituting a quorum or majority as required by § 286.010, RSMo., V.A.M.S. Similarly the order denying the motion to vacate was properly signed by two members thus constituting a majority. The award and order were therefore acts of the Commission and were totally within its powers.

We pass now to the merits of this appeal. The evidence was that while claimant was working for the employer on November 28, 1966, he was pushing a gate on a skid and it hung up. When it did so his feet slipped in some sealer compound on the floor and he felt tremendous pain in his back. The same day he went to the employer's medical department where he told the nurse about the injury and she gave him heat therapy. He visited the company doctor for heat treatments every day from the accident until hospitalized. Claimant was placed in the hospital by Dr. Holbrook, the company doctor, sometime in December and spent a week in traction. After his release claimant learned he was discharged by employer for falsifying his employment application by denying he had received compensation from previous employers for injuries when claimant had in

fact received $88.24 for an injury to his finger which occurred while working for a previous employer and by omitting to mention three other employers for whom he had worked. After his discharge by employer he testified he applied for several jobs, each time acknowledging his back injury and being denied employment. One of these applications was to Fisher Body but the records of that plant show that his application was in fact made before his alleged accident at Ford, not after as he testified.

Subsequently claimant went to work for Emerson where he was still employed at the time of the hearing. Claimant testified that he falsified his employment application at Emerson by omitting any reference to his back injury. He also stated that he was given a pre-employment physical examination which he passed. The medical director at Emerson did not testify. The only evidence as to the pre-employment physical examination conducted by that company was that given by a nurse and the physical examination record. The latter contained claimant's denial of an existing back injury and the statements he had no physical defects at that time (January 11, 1967) and had suffered no accidents or illnesses in the previous year. The testimony of the nurse was that pre-employment physical examinations conducted at Emerson normally include an examination of the back and any abnormality would be noted on the examination report. She further testified that such examinations normally include back movements, forward, lateral, and knee bends, and that this is done in her opinion on every examination. However, the same witness testified that she could not state whether such an examination was given claimant because she does not remember being present and normally would not be as such examinations are usually conducted by the doctor in a closed room without the nurse's presence. Her further testimony was that the doctor conducting the examination makes his own notes on the physical examination which he conducts, that back examinations are among those portions of the examination which are left entirely to the doctor, and that the medical records did not show the tests described as to certain back injuries were in fact performed upon claimant. She also testified that the doctor spends four hours a day at the plant and sees fifteen to twenty job applicants each day. The claimant went to work for Emerson on January 11, 1967.

His back continued to give him trouble and in May of 1967 he went to a hospital emergency room where he was seen by Dr. Morgan who testified that claimant gave a history of twisting his back while working at Ford and claimed it had continued to hurt him until that time. Dr. Morgan testified that when he first saw claimant in May of 1967 it was his opinion at that time that claimant suffered an acute soft tissue injury of his lower back, ligamentus or myofascial in origin. He did find splinting of the spine upon bending. He continued to treat him until May 31 when he thought he was improved sufficiently to go back to work. On August 23, 1967 Dr. Morgan stated in his report: "There were no signs of nerve root pressure." He did not then diagnose a protruding disc. He did not see claimant again until sometime in October. At that time claimant had essentially the same kind of symptoms he was having in May. The neurological examination was again within normal limits. Based upon claimant's failure to respond to conservative treatment and the presence of bilateral pain in the gluteal regions with some splinting over the lower lumbar segments he recommended claimant have a myelogram. In December of 1967 claimant experienced pain in his left leg for the first time. The medical expert's testimony was that claimant in his opinion had a "midline bulging or protruding disc which slowly and gradually enlarged and most of this enlargement occurred to the left side until eventually it cut the L-5 nerve root."

The hypothetical question asked of Dr. Morgan by claimant's attorney in order to

establish causal connection between this injury and the accident at Ford asked the doctor to assume claimant gave a history of being injured in an accident while pushing a gate at work at the Ford Motor Company; that as a result of pushing this gate when his foot had slipped his back strained and twisted; that he began to have low back complaints with continuing difficulty; that he was treated at the company dispensary by the nurse and by Dr. Holbrook; that about the middle of December 1966 he was transferred to DePaul Hospital and placed in traction for five days; that he remained off work for four weeks thereafter; that he continued to have trouble with his back which grew progressively worse; and that he first saw Dr. Morgan on the date the doctor indicated, related his difficulties to Dr. Morgan, was examined by the doctor who found the objective signs he testified to. The doctor was then asked whether he could say within a reasonable degree of medical certainty "* * * whether or not the accident he related to you which occurred in November, 1966, caused the injury you found him to have in May of 1967 and for which you later operated on him". Dr. Morgan's testimony was that he could and that, in his opinion, the accident was the cause of the injury.

The employer's counsel then undertook cross examination of Dr. Morgan. The hypothetical question he asked required Dr. Morgan to assume claimant took a physical examination at Emerson Electric in the early part of January 1967 which he passed; that he went to work for that firm on January 11 of that year and continued working for them until the occasion of his visit to Dr. Morgan in May of 1967; that when claimant filled out his application at Emerson he did not say anything about having back problems at that time; and that he related to Dr. Morgan that his condition became acute when pushing a car at home about a week before his first visit to the doctor. Dr. Morgan was then asked, in effect, whether or not he could say

"with reasonable medical certainty what might have produced the condition for which he was finally operated?" The doctor's answer was that given these hypotheses, and specifically that he had a back examination " * * * then I wouldn't see how you could tell." The employer's counsel then asked Dr. Morgan if it was not a fact that his conclusion with respect to causal connection " * * * is based upon the assumption he did have the pain in the intervening period from May, 1966 to 1967?" The answer was "Yes". It is obvious that this question was in fact misstated. The whole transcript indicates that the witness understood counsel was actually asking about the period between November 1966, the date of the accident, and May of 1967 when Dr. Morgan first saw claimant. In response to further questioning Dr. Morgan testified his conclusion with respect to causal connection depended entirely upon the veracity of the claimant.

In response to questions by the Referee Dr. Morgan reaffirmed the causal connection he found, stating that the clinical findings were consistent with the history claimant gave him. He was asked if in his experience the time lapse was normal in the development of such injuries. The witness answered that while it was "on the outside of normal range" for the average it was not for this particular claimant. In response to the Referee's further questioning the doctor testified claimant could have taken and passed the pre-employment physical in January of 1967 even if the injury had occurred in November of 1966 as claimant testified. In support of his answer he noted that even as late as May he could not definitely diagnose the disc and that claimant would have been able to hide it unless the examining physician was alarmed specifically and went through the ordinary tests.

Finally employer called a Dr. Harell, who had seen employee on a consulting basis while hospitalized the first time and again subsequent to the operation. His diagnosis as a consultant was strain or

sprain of the back. He found no objective symptoms in December 1966. In answer to a hypothetical question the witness stated that there was no causal connection in his opinion between the accident and the subsequent operation.

The employer contends there is insufficient competent and substantial evidence to sustain the award. It first urges that claimant's testimony was so contradictory, so filled with falsifications, and in fact so perjured as to be without probative value. The employer relies upon the rule stated in Welborn v. Southern Equipment Co., Mo., 395 S.W.2d 119, that the contradictory testimony of a single witness relied on to prove a fact in a compensation proceeding does not constitute "substantial evidence" in the absence of other circumstances tending to show which of two versions is true. First of all, we note that reliance on the *Welborn* case is ill-founded. Due to the fact situation in that case, the rule can only be considered dictum of the decision. Wigham v. Ben Franklin Division of City Products Corp., Mo.App., 459 S.W.2d 32. The rule is not so broad as employer would urge. As this court held in Sita v. Falstaff Brewing Corp., Mo. App., 425 S.W.2d 487, l. c. 489: "'* * * the courts are speaking about self-destructive evidence on a *material, essential* element of a claimant's case, not conflicting evidence on a non-essential fact.'" (Emphasis supplied.)

The employee admitted that an accident did occur on November 28, 1966, and there is no doubt that employee underwent surgery for a back disability. The only material essential element at issue in this case is the question of causation. The contradictions and falsifications alleged by employer are extremely peripheral to that issue. The only contradiction or falsification touching directly thereon is claimant's evidence about how the injury occurred and his statements in that regard. At the hearing before the Referee claimant did not deny that he told various people he hurt his back pushing a car. He did deny the injury in fact occurred in that manner. Undoubtedly claimant's various utterances constitute a matter the Referee could consider when judging credibility but at the hearing claimant did not vary his testimony on this point and did offer some evidence to explain why he told such a story. In effect, his excuse was he had to have a job and having been denied employment when he told the truth about his back he was so desperate for employment he had to lie about it.

In the Referee's findings of fact the following appears: "* * * I do not overlook the obvious discrepancies that occurred in claimant's version of the accident and his statements of claim and other statements made during the course of the year in question. But, having viewed the claimant during his testimony and having considered his attitude and demeanor, as well as his age and education, I find that during the course of his difficulties he was willing to bend the truth to fit the claim form or application but that he felt that this bending of the truth was required by economic necessity. I find that the other accident stories are all explained and that the truth of the matter is as he testified and that any prior inconsistence or misstatements were made .because he needed work and/or income while unable to work and he felt that what he did was the proper way to accomplish his objective." In essence, as the Referee recognized, the issue is one of credibility. The alleged contradictions and falsifications are not such as to authorize our reversal of the findings of the Referee and the Industrial Commission on that issue. Pate v. St. Louis Independent Packing Co., Division of Swift & Co., Mo.App.1968, 428 S.W.2d 744, l.c. 750.

Employer argues that these same falsifications and inconsistencies constitute perjured testimony so as to allow this court to consider the probative weight of the evidence and enter a decision contrary to that of the Referee and the Industrial

Commission. As noted above, the majority of these statements do not relate to the issue of causation, the only material and essential element in the case. There is nothing in the record that compels a conclusion that the testimony touching on that issue was willfully or corruptly given as required by § 557.010, RSMo., V.A.M.S. We find no merit to this contention.

■ The employer next contends claimant has failed to bear his burden of proof to establish a causal connection between the accident at Ford and the injury. The attack made by employer is based upon Dr. Morgan's answer to the hypothetical propounded by employee's counsel. The argument is that when the doctor was given the hypotheses stated in the hypothetical question, specifically that claimant had undergone a back examination which he was able to pass, the doctor could not "see how you could tell" what caused the injury, the causal connection established by the doctor's earlier testimony was destroyed. We cannot agree.

Following the employee's hypothetical, there were other questions asked of Dr. Morgan which, when answered by him, placed the answer upon which employer relies in proper perspective. In response to one such question by employer's counsel Dr. Morgan stated that all of his conclusions with respect to causal connection were based upon the assumption claimant had pain between the accident and his first visit in May. Claimant had so testified but that fact was not contained in employer's hypothetical. Further, in response to questions from the Referee Dr. Morgan stated his clinical findings were consistent with claimant's history and, while on the outside of normal time range for the average time of such injuries, was within that range for this claimant. In addition and of particular significance, Dr. Morgan's testimony was that unless the examining doctor had been specifically alarmed and went through the ordinary tests to ascertain back injury, claimant could have had his back injury at the time he was examined at Emerson and successfully concealed it even as he testified. The evidence is that the evidence does not establish that such tests were in fact made upon claimant. This is not the case presented in Downs v. A. C. F. Industries, Inc., Mo.App., 460 S.W.2d 293, where proven hypothetical facts caused the witness to change his opinion. Here the elements in the hypothetical causing the contradictory opinion were not uncontested and in fact not in evidence.

In answer to the hypothetical question from claimant Dr. Morgan testified that the injury was caused by the accident. It was also his testimony that the alleged incident with the car was not in his opinion the cause of the injury. These factors, together with those brought out by the questions of the Referee, constitute competent and substantial evidence of causal connection which, since believed by the Referee and the Industrial Commission, require ruling this allegation of error adversely to employer.

■ Employer's final assignment of his general allegation of error is that the award is clearly contrary to the overwhelming weight of the evidence. We disagree. The facts set out in this opinion constitute competent and substantial evidence upon which the Referee and the Industrial Commission could base the award.

For the foregoing reasons, we find no error by the circuit court. The decision is affirmed.

DOWD, SMITH, SIMEONE and WEIER, JJ., concur.