**Randa K. BARKER, Plaintiff–Appellant,**

v.

**SECRETARY OF STATE'S OFFICE OF MISSOURI, Defendant–Respondent.**

No. WD 39683.

Missouri Court of Appeals, Western District.

May 31, 1988.

Harvey M. Tettlebaum, Jefferson City, for plaintiff-appellant.

William L. Webster, Atty. Gen., Terry A. Allen, Deputy Asst. Atty. Gen., Jefferson City, for defendant-respondent.

Before NUGENT, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

Randa K. Barker appeals from a final award denying worker's compensation by the Labor and Industrial Relations Commission for a back injury allegedly occurring during her employment with the office of the Secretary of State. Two points are raised on appeal: (1) that the Labor and Industrial Relations Commission acted without and in excess of its power in that one of its members, Hannelore Fischer, had previously served as counsel for the employer and insurer in this specific case; and (2) that there was insufficient competent evidence to support the commission's decision denying Barker's compensation.

Randa K. Barker was employed by the Secretary of State's office for eighteen years. One of her duties as Administrative Assistant to the Corporation Counsel was to assist in the mailing out of annual report forms required to be sent to the Corporate Division from all corporations doing business in Missouri. The pre-addressed reports had to be moved from the computer room on the second floor to the mailing room on the main floor. The boxes weighed thirty-three pounds apiece and were approximately 2 to 2½ feet by 2 feet. Barker and her fellow employees lifted the boxes on to dollies and wheeled them to the elevator for transport to the mailroom where they then unloaded the boxes.

On April 28, 1981, the second day of loading and unloading boxes, Barker experienced back pain. She testified that at some time during that morning she had a back ache and she thought that she had sprained her back. Although she did tell two co-workers that her back hurt, she returned to work on April 29. The pain subsided within two weeks, but around the first of July she woke up with numbness and pain in her leg. She continued to work and the pain got worse. On July 29, she went to her family doctor, Dr. Weiss. He ordered bedrest. On August 10, she returned to work but felt no better. She entered St. Mary's Health Center on August 17, and was examined by Dr. Krautmann and Dr. Cox, who ran various tests, including a CAT–Scan and a myelogram. On August 25, the doctors performed surgery on a ruptured disc that was pinching a nerve in her leg. Barker returned to work on November 2.

On October 17, 1984, while she was at work, Barker was unable to get up from her chair. She was then assisted to Dr. Krautmann who advised bedrest. A few days later she returned to work, but on October 24, she was hospitalized, and put in traction, while undergoing a series of tests indicating that the disc had again ruptured.

Barker had told her supervisor in July 1981, of her injury. She attempted to file a claim in August, but was told that because she had not done so within twenty-four hours she could not. She did file a claim with the state health insurance plan; however, she indicated that the injury was not work related because she did not connect the pain in her leg with her back at that time.

On November 3, 1981, Randa K. Barker filed a claim for compensation with the Division of Worker's Compensation alleging an injury to her back on April 28, 1981, while "lifting and carrying boxes of annual registration reports" for the Corporate Division of the Secretary of State, her employer. A hearing on the matter was held on January 31, 1985, before an Administrative Law Judge (hereinafter ALJ). Hannelore Fischer, an assistant attorney general, appeared as counsel for the employer and the insurer, Central Accident Reporting Office, a self-insurer. The ALJ, in a decision rendered on June 6, 1985, found against Barker on the grounds that she failed "to prove a causal relationship between the occurrence on April 28, 1981, and the disability she now complains of." Thus, compensation was denied. On June 26, 1985, Barker applied to the Labor and Industrial Relations Commission for review of the ALJ's decision. During the interval between the decision by the ALJ and the date of the review, Hannelore Fischer was appointed to the Labor and Industrial Relations Commission.

The Labor and Industrial Relations Commission consisted of three members, Lester Watkins, Robert L. Fowler and Hannelore Fischer, chairman. A review of the ALJ's decision was undertaken by the Commission. A majority of members, Lester Watkins and Hannelore Fischer, found against Barker ruling that the ALJ's decision was supported by substantial and competent evidence. Member Watkins signed the final award denying compensation.

Member Robert L. Fowler disagreed with the majority. In a separate opinion he outlined his dissent, the basis of which was testimony given by Dr. Garth S. Russell. Dr. Russell opined that Barker's back injury was a result of trauma suffered when she lifted boxes in April 1981. Member

Fowler also considered the case of *Crites v. Missouri Dry Dock and Repair Company*, 348 S.W.2d 621 (Mo.App.1961), where a back injury was found to be compensable although fifteen months had elapsed between the time of the injury and medical attention. Member Fowler found that the "overwhelming weight of the evidences [sic] supports a finding that Mrs. Barker suffered a compensable injury while employed by the Secretary of State."

Chairman Fischer concurred in the denial of compensation in a separate opinion. She pointed out her previous involvement in the case as attorney for the employer and the insurer but noted that there had been no motion to disqualify filed. Fischer outlined the circumstances surrounding her involvement stating that she took no part in the case until a stalemate was reached. After reviewing the case she joined with member Watkins. In support of her participation in the decision she relied on the Rule of Necessity which allows an interested judge to perform his duty in a cause where there is no mechanism for replacement and where failure to preside would foreclose all adjudication or review in that cause. *United States v. Will*, 449 U.S. 200, 213–215, 101 S.Ct. 471, 480–481, 66 L.Ed.2d 392 (1980).

One of the fundamental precepts which govern the sound administration of justice is that, not only must justice be done, an appearance of justice must be maintained. To maintain this appearance of justice, it is important to consider the maxim which states that a man should refrain from being a judge in his own cause. The earliest Missouri pronouncement on the subject is found in *State ex rel. Sansone v. Wofford*, 111 Mo. 526, 20 S.W. 236 (1892):

> It is a maxim of common law, the wisdom and propriety of which will not be questioned, that "no one should be a judge in his own cause." Provision has always been made, in case of the disqualification of a judge to sit in any case, by reason of his interest therein, to supply a substitute to hear and determine the case. This interest which disqualifies a judge is always made to include that which an attorney had in a case in which he has professionally acted.

*State ex rel. Sansone v. Wofford, supra,* at 236.

Fischer served as counsel for the insurer in the original claim made by Barker. The only path open to her in defending her part in the proceedings is that ancient exception to the requirement of recusal—The Rule of Necessity.

Quite simply, the Rule of Necessity allows a person to be a judge in a case in which that person has an interest, provided that no arrangement is made for a substitute judge. The Rule was born within the structure of English Common Law, first appearing in 1430 when it was held that the Chancellor of Oxford could act in a case to which he was a party as there was no substitute to hear the case. *See United States v. Will, supra,* at 213.

The doctrine operates on the principle that a biased judge is better than no judge at all. Disqualification can not be allowed to bar the doors to justice or to destroy the only tribunal vested with the power to act.

The Supreme Court of the United States has recognized and accepted the doctrine. The earlier cases dealt with the Compensation Clause and only vaguely addressed the Rule. *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939); *O'Donoghue v. United States*, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1933); *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The court in *Evans* gives the clearest statement concerning the Rule without directly mentioning it:

> Because of the individual relation of the members of this court to the question, thus broadly stated, we cannot but regret that its solution falls to us.... But jurisdiction of the present case cannot be declined or renounced. The plaintiff was entitled by law to invoke our decision on the question as respects his own compensation, in which no other judge can have any direct personal interest; and there was no other appellate tribunal to which under the law he could go.

*Evans v. Gore, supra,* 253 U.S. at 247–248, 40 S.Ct. at 551.

Both state[1] and federal[2] courts have reviewed the rule from time to time. There is a paucity of law on the subject in Missouri. What is to be found suggests a careful measured approach in applying the Rule.

Missouri recognized the Rule of Necessity in *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570 (Mo. 1965). In *Rose* a physician appealed a decision by the state board revoking his license to practice. He asserted a denial of due process as the charge against him originated with and was heard and determined by the state board. The *Rose* court found that this attempt to disqualify the entire board on due process grounds was unfounded. No board member had a personal interest in the revocation of Rose's license. None had participated in the case prior to the hearing except for giving notice to the doctor that information had been received by them necessitating a hearing on the truth of the charges against him. The court mentions that, "even if the hearing board is possessed of prior knowledge of the matters in hearing, necessity dictates that the only board authorized to hold the hearing must proceed." *Rose, supra,* 397 S.W.2d at 575. With no provision for any other authority to step in, the physician's case could never be tried thus his license would be irrevocable regardless of his conduct.

Appellant attempts to limit *Rose* to situations where an entire board is disqualified by using *Union Electric Company v. Public Service Commission,* 591 S.W.2d 134 (Mo.App.1979). In *Union Electric,* a public utility and several industrial intervenors sought a writ of prohibition to prevent a member of the Public Service Commission from participating in a rate case in which she previously had an interest in a consumer-oriented corporation opposing a rate increase for that utility. The court held that members of the Public Service Commission are prohibited from acting in cases where they have an interest or occupy the status of a party. *Id.,* at 139. A distinction was made from the *Rose* case which sought to disqualify the entire board so that without provision for another board to consider the charges against him, Rose would avoid the revocation of his license. In *Union Electric* there was another way to proceed without the participation of the tainted Commissioner. In the present case there is not.

Recent Missouri law underscores the inescapable conclusion that the Rule of Necessity is still a viable instrument in cases where there is no other mechanism for review. The case of *State ex rel. Powell v. Wallace,* 718 S.W.2d 545 (Mo.App. 1986), upheld possible invocation of the rule where a city mayor was removed by the city council. Here the mayor was not able to produce any evidence that the council could not fairly adjudicate his removal. The court after noting this goes on to say "the Wellston City Council was the sole instrumentality authorized to remove the City's mayor. In those instances where the only forum authorized by statute would be unable to proceed, the Rule of Necessity could be invoked ... in spite of ... bias or self-interest." *Id.,* 718 S.W.2d at 548.

More recently in *Westbrook v. Board of Education,* 724 S.W.2d 698 (Mo.App.1987), the Rule is again examined briefly. Four permanent teachers and one probationary teacher were dismissed from their positions after the drowning death of a student during a field trip. The teachers contended that the Board was biased by a desire to avoid a lawsuit. The court found no merit in this contention, pointing out that even if

---

1. *See e.g., Bridges v. McCorvey,* 254 Ala. 677, 49 So.2d 546 (1950); *Olson v. Cory,* 26 Cal.3d 672, 164 Cal Rptr. 217, 609 P.2d 991 (1980); *Schwab v. Ariyoshi,* 57 Haw. 348, 555 P.2d 1329 (1976); *State ex rel. Mitchell v. Sage Stores Co.,* 157 Kan. 622, 143 P.2d 652 (1943); *Carter v. Craig,* 574 S.W.2d 352 (Ky.App.1978); *Borough of Fanwood v. Rocco,* 33 N.J. 404, 165 A.2d 183 (1960); *Emerson v. Hughes,* 117 Vt. 270, 90 A.2d 910 (1952).

2. *See e.g., Pilla v. American Bar Association,* 542 F.2d 56 (8th Cir.1976); *Miller v. City of Mission,* 705 F.2d 368 (10th Cir.1983); *In re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261 (11th Cir.1984), *cert. denied sub nom. Hastings v. Investigating Committee of the Judicial Council of the Eleventh Circuit,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984), *reh'g denied,* 469 U.S. 1001, 105 S.Ct. 406, 83 L.Ed.2d 341 (1984).

the Board had a stake in the outcome it was empowered by the rule of necessity to hear the evidence and to make a decision. This reasoning rests on the proposition that the Board was the only administrative body authorized to take action.

 In the instant case it is clear that the rule of necessity must be invoked. Exhaustive research has failed to yield any other possible solution to this unusual and vexatious problem. The Missouri Labor and Industrial Relations Commission consists of three members and any two of these members constitute a quorum. § 286.010, RSMo 1986. To render a valid decision there must be majority of two members. See *Williams v. Marcus*, 652 S.W.2d 893, 894 (Mo.App.1983); *Graphenreed v. Ford Motor Co.*, 482 S.W.2d 68, 70 (Mo.App.1972). There is no other mechanism for review available, thus when a deadlock occurs between two members of the Commission, the rule of necessity applies to allow the third member to participate and break the tie even in face of this member's bias.

This does not, however, end our inquiry. We have agonized at great length to arrive at a fair and just solution to the problem posed by the unusual circumstances in the instant case. To this end we adopt the suggestion made by Professor Davis in his treatise on administrative law. Davis in his review of the law of necessity states:

> The doctrine is so clear that it is seldom litigated, but when it causes results that are palpably unjust, perhaps it ought to be litigated, because ways can sometimes be found to relieve against the injustice. Whenever the rule of necessity is invoked and the administrative decision is reviewable, the reviewing court, without altering the law about scope of review, may and probably should review with special intensity.

3 K. Davis, Administrative Law Treatise § 19.9 (2d ed. 1980).

The heightened scrutiny with which we review this case does not mean, however, that we are undertaking a de novo review. Our scope of review is rigidly prescribed by statute and we will not stray out of the perimeters set for us by the legislature. The scope of review on appeal is governed by § 287.495.1, RSMo 1986, which states:

> The final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which the accident occurred.... Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> > (1) That the commission acted without or in excess of its powers;
> >
> > (2) That the award was procured by fraud;
> >
> > (3) That the facts found by the commission do not support the award;
> >
> > (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1, RSMo 1986.

 Our review of this case rather, will be done with a more critical eye than is usual. The record will be thoroughly examined to determine if any injustice has been done to Barker given the circumstances present. Our review, from this point of view, convinces us that the award of the Commission was not based on "sufficient competent evidence in the record to warrant the making of the award." *Id.*

"The fundamental purpose of the Workers' Compensation Law is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 783 (Mo. banc 1983). The law is to "be liberally construed with a view to the public welfare." § 287.800, RSMo 1986. To this end, any doubt as to the right of an employee to compensation should be settled in favor of that employee, but not to the

extent of validating a claim which lacks an essential element. *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 412 (Mo.App. 1985). In the instant case the majority of the Commission, in affirming the ALJ's decision, finds an essential element to be missing, that of causation. The overwhelming weight of the evidence militates against such a conclusion.

The decision by the Administrative Law Judge indicates his confusion with the nature of the injury suffered by Barker. He states:

An additional aspect of this case that is most perplexing is that the employee experienced pain for a period of some eleven days following the occurrence and then, according to her testimony, she was completely pain free for a period of six to eight weeks thereafter until approximately July 1, 1981. On that date she experienced numbness in her left leg. Dr. Walters and Dr. Weiss both agree that it is unusual to be free of pain for six to eight weeks with a herniated disc. I do not agree with Dr. Russell that it is the usual case.

In rendering this opinion the ALJ both mis-states the evidence and ignores the case of *Crites v. Missouri Dry Dock and Repair Company*, 348 S.W.2d 621 (Mo. App.1961). By affirming this decision of the ALJ, the Labor and Industrial Relations Commission compounds the error. Dr. Weiss testified in response to a question as to whether it was possible to have a herniated disc and go without symptoms for an eight to ten week period that he didn't think so. Later this exchange took place:

Q. Considering the history given to you by Mrs. Barker regarding the course of her pain, is it your opinion that Mrs. Barker could have received a herniated disc on April 28th, 1981?

. . . .

A. Let me just—I don't want to say yes or no to that question. I think it would be highly unusual to have no pain at all for 3 to 4 months prior to having—after having a herniated disc and then to have

symptoms of the pain occuring at that point and time.

Still later Dr. Weiss again equivocated:

Q. Do you have any reason to believe that Mrs. Barker did injure her back during her employment with the State of Missouri?

A. I can't answer that yes or no. I think it's possible, but on the other hand it's not possible. Because I just have no reflection of that in my records.

Dr. Harold Walters, who also testified for the employer, stated that in his opinion Barker's experience with pain was not impossible but that it was unusual. On the other hand, Dr. Garth Russell, who testified on behalf of Barker, did not equivocate. He gives his opinion that Barker's injury was due to the trauma of lifting and goes on to describe the time lag between the injury and the beginning of the pain as, "a frequent history of the course of this type of disease."

This court does not judge the credibility of the witnesses; that responsibility lies with the Commission. *Tibbs v. Rowe Furniture Corp., supra*, 691 S.W.2d at 411–412. This court does, however, review to see that the Commission acted properly. The ALJ misunderstood critical testimony concerning causation when he stated that, "I do not agree with Dr. Russell that it is the usual case." Dr. Russell did not so testify. The case of *Crites v. Missouri Dry Dock and Repair Company, supra*, is strikingly similar to the instant case. The court in *Crites* affirmed a finding by the commission that an injury to the back, followed by fifteen months of intermittent pain and no lost time from work, was a compensable injury where this period was then followed by severe pain and surgery. In failing to take *Crites* into account and in failing to resolve doubt in favor of the employee as mandated by *Wolfgeher v. Wagner Cartage Service, Inc., supra*, the Commission erred. It is overwhelmingly obvious that the injury to Barker resulting in her disability was due to her lifting the boxes of reports at work. In order to entitle an employee to compensation all that is required is that the injury be shown

to be work induced, occurring during the performance of that employee's duties. *Staab v. Laclede Gas Company*, 691 S.W. 2d 343, 344 (Mo.App.1985). Barker has carried her burden of proof. Thus, the decision of the Labor and Industrial Relations Commission is reversed and the cause remanded for evidentiary hearings on the percentage of disability and the amount of medical expenses incurred by Barker.

All concur.