

# In the
# Missouri Court of Appeals
# Western District

DALE NIVENS,                                          )
                                                     )
    Respondent-Appellant,                            )  WD82132 consolidated with
                                                     )  WD82136
v.                                                   )
                                                     )  OPINION FILED:  October 8, 2019
INTERSTATE BRANDS                                    )
CORPORATION,                                         )
                                                     )
    Respondent,                                      )
                                                     )
TREASURER OF THE STATE OF                            )
MISSOURI, CUSTODIAN OF THE                           )
SECOND INJURY FUND,                                  )
                                                     )
    Appellant-Respondent.                            )

## Appeal from the Labor and Industrial Relations Commission

Before Division Three:  Gary D. Witt, Presiding Judge, Edward R. Ardini, Jr., Judge and
Thomas N. Chapman, Judge

The Treasurer of the State of Missouri as Custodian of the Second Injury Fund

("Fund") appeals the Final Award of the Labor and Industrial Relations Commission

("Commission") declaring Dale Nivens ("Nivens") to be permanently and totally disabled.

The Fund raises two allegations of error.  First, the Fund alleges that the Commission

improperly invoked the Rule of Necessity in allowing a conflicted commissioner to

participate in the Final Award. Second, the Fund alleges that the Final Award was against the weight of the evidence because Nivens was employable on the open labor market. Nivens cross-appeals alleging that the Commission erred in finding that his primary knee injury was not independently sufficient to render Nivens permanently and totally disabled. We affirm.

## Factual and Procedural Background

Nivens began working for Interstate Brands Corporation ("Interstate Brands") in 1981 as a delivery driver and route salesman. He was responsible for driving a delivery truck and delivering breads and cakes to grocery stores on his route. This included pushing and pulling a fully loaded two-wheel cart of up to 100 pounds, as well as a four-wheeled transport rack that could weigh up to 150 pounds. Nivens also loaded the products onto in-store shelves which involved stooping, kneeling and lifting.

On February 7, 2008, Nivens injured his right knee while pushing a fully loaded transport rack. At that time, a wheel locked on the transport rack, which caused Nivens to "wrench" his right knee and fall ("2008 Knee Injury"). An MRI showed evidence of a meniscus tear, degenerative arthritis in the patellofemoral joint, and a possible loose body. Nivens underwent surgery and was ultimately released to return to work.

In July of 2008, Nivens returned to work at International Brands. However, he required assistance to complete his job duties. International Brands provided him with an assistant who was responsible for loading the racks and pushing them into the store as well as driving the truck. Nivens remained responsible for running the "hand-held" electronic device, keeping inventory, and ordering. In the fall of 2008, Interstate Brands informed

2

Nivens he was going to have to complete his job without an assistant. Nivens felt that he could not perform the duties of his job without assistance given his physical restrictions so he retired.

Nivens filed a workers' compensation claim against Interstate Brands based on his 2008 Knee Injury on November 14, 2008. He also brought a claim against the Fund alleging that his preexisting conditions combined with the 2008 Knee Injury rendered him permanently and totally disabled.[1] A hearing was held before an Administrative Law Judge ("ALJ") on July 19, 2017. On September 15, 2017, the ALJ entered a Final Award finding that Nivens sustained a 35 percent permanent partial disability of the right knee as a result of the 2008 Knee Injury. Additionally, the ALJ found that Nivens's 2008 Knee Injury combined with his preexisting conditions, including a 2007 wrist injury, a preexisting cardiac condition, prior low back injuries, and a prior right knee injury to render him permanently and totally disabled and this disability should be covered by the Fund.

The Fund appealed the award of the ALJ to the Commission. Commissioner Chick initially declined to participate in review of the action because he had a "social relationship" with Nivens when they were classmates during high school[2] and Commissioner Chick sought to avoid any appearance of impropriety. The Commission decided the appeal based on the record of the hearing before the ALJ without hearing additional evidence. The other two Commissioners disagreed as to the outcome of the claim so no final decision could be reached. Commissioner Chick invoked the Rule of Necessity to join in the review and

_____

[1] The claim was amended on October 2, 2009 and March 13, 2015.
[2] We note that Nivens graduated high school in 1966, some 52 years before this case appeared before the Commission.

3

voted along with Commissioner Larsen to affirm the award of the ALJ in all respects. On August 20, 2018, in a two-to-one decision, the Commission adopted the award and decision of the ALJ in its entirety ("Final Judgment"). Commissioner Forrester dissented.

The Fund appealed to this Court alleging that the Commission erred in invoking the Rule of Necessity and further contending that the Commission's finding that Nivens was unemployable on the open labor market and therefore permanently disabled was against the overwhelming weight of the evidence. Nivens cross-appealed disputing the Fund's allegations of error but also claimed that, alternatively, if the evidence was found not to support the finding of liability for the Fund, the evidence established that the 2008 Knee Injury by itself rendered him permanently and totally disabled.

## Standard of Review

This Court's scope of review "is rigidly prescribed by statute and we will not stray out of the perimeters set for us by the legislature." *Henley v. Fair Grove R-10 Sch. Dist.*, 253 S.W.3d 115, 127 (Mo. App. S.D. 2008). Under section 287.495.1,[3] we must affirm the award of the Commission unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. *Barker v. Sec'y. of State's Office of Mo.*, 752 S.W.2d 437, 441 (Mo. App. W.D. 1988). "[W]e examine the record as a whole to determine if the award is supported by sufficient competent and substantial evidence, or

---

[3] "In a workers' compensation case, the statute in effect at the time of the injury is generally the applicable version." *Anderson v. Veracity Research Co.*, 299 S.W.3d 720, 725 (Mo. App. W.D. 2009) (quoting *Chouteau v. Netco Constr.*, 132 S.W.3d 328, 336 n. 3 (Mo. App. W.D. 2004)). Thus, in this case, all statutory citations are to RSMo 2000 as updated through February 7, 2008, the date of Nivens's primary injury.

whether the award is contrary to the overwhelming weight of the evidence." *Lawrence v. Treasurer of State-Custodian of Second Injury Fund*, 470 S.W.3d 6, 12 (Mo. App. W.D. 2015) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003)). We review the award objectively and not in the light most favorable to the award. *Lawrence*, 470 S.W.3d at 12. "We defer to the Commission's credibility determinations and to the weight it accords the evidence, but we review issues of law, including the Commission's interpretation and application of the law, *de novo*." *Id.*

Additionally, because the Rule of Necessity was invoked, the actions of the Commission must be viewed with "special intensity," and the record must be "thoroughly examined to determine if any injustice has been done." *Barker*, 752 S.W.2d at 441. "Regardless of the intensity of our review, that standard does not allow us to intrude upon the factual determinations made by the Commission based upon credibility, if the credited witness's testimony is otherwise supported by substantial and competent evidence on the record as a whole." *Henley*, 253 S.W.3d at 131 n. 11. This Court's standard of review is prescribed by the General Assembly and we merely "proceed[] in the case at bar, with as thorough a review of the record as we could muster and with as critical an eye as our cognitive abilities allow." *Id.* at 127; *Lacy v. Fed. Mogul*, 278 S.W.3d 691, 700 (Mo. App. S.D. 2009).

## Discussion

## I.

The Fund's first point on appeal alleges that the Commission erred in affirming the Final Award because Commissioner Chick should not have participated in the decision.

5

Although the Commission was deadlocked without Commission Chick's participation, the Fund asserts that the Rule of Necessity should not have been invoked. Instead, the Commission should have waited until the appointment of a new commissioner which occurred two days after the Commission entered its Final Award in this case.

"Quite simply, the Rule of Necessity allows a person to be a judge in a case in which that person has an interest, provided that no arrangement is made for a substitute judge." *Barker*, 752 S.W.2d at 439. In *Barker*, a commissioner had previously represented the employer/insurer. *Id.* The commissioner recused herself from the case and did not participate. *Id.* But, following a split decision between the remaining two commissioners, the conflicted commissioner reentered the case and cast the deciding vote, citing the Rule of Necessity. *Id.* On appeal, the court found that the Rule of Necessity was properly used to break the stalemate of the commission but found that its use required the appellate court to use "special intensity" to review the case and insure that justice was done. *Id.* at 441. Since *Barker*, Missouri courts have continued to hold that, where the commission has reached a stalemate because two members have reached opposing findings and the third member has recused, it is proper for the third member to reenter the case to break the stalemate under the Rule of Necessity because there is no mechanism under the statute to allow a final award to be entered in this scenario. *See Jennings v. Station Casino St. Charles*, 196 S.W.3d 552, 556 n. 8 (Mo. App. E.D. 2006) (Rule of Necessity allowed participation by commissioner, who had previously recused himself, to vote to break a stalemate); *Barker*, 752 S.W.2d at 441 (same); *But see Cent. Mo. Plumbing Co. v. Plumbers Local Union 35*, 908 S.W.2d 366, 371 (Mo. App. W.D. 1995) (Rule of Necessity not

6

applicable where commissioner did not disclose his interest in the case nor step into the case only to provide a quorum or to break a stalemate).[4]

The Fund contends that the Rule of Necessity's use was improper in this case because the Commission should have waited until a new commissioner was appointed to replace Commissioner Larsen, which occurred two days after the Final Award was entered. We disagree. First, it is important to note that there is nothing in the record to suggest that the Commission knew that an appointment was imminent. The Fund notes that both Commissioner Chick and Commissioner Larsen's six-year terms on the Commission had expired, but that does not equate to knowledge that a replacement was soon to be appointed by the Governor.[5] The Fund's argument would have us impute knowledge onto the Commission that is not supported by the record before this Court, and we decline to do so.

Further, even were we to accept the assertion that the Commission had some prior knowledge of the appointment of a new commissioner, as Nivens points out, it is mere supposition that the new commissioner would have negated the need for invocation of the rule. The newly appointed commissioner did not replace Commissioner Chick who invoked the rule but instead replaced Commissioner Larsen who voted to affirm the ALJ's Final Award. It is merely conjecture that the newly appointed commissioner would have voted to overturn the ALJ's Final Award thereby negating the need for the invocation of the Rule of Necessity by Commissioner Chick.

---

[4] We note that *Barker* was decided over 30 years ago and the legislature has failed to provide an alternative mechanism for addressing this situation other than the application of the Rule of Necessity.

[5] We note that Commissioner Chick's term was expired at the time this Final Award was entered and his successor has yet to be appointed.

It is also important to note that the Fund is not correct in its statement that "Commissioner Chick admits that he is not an impartial adjudicator in Mr. Nivens's case." Commissioner Chick went to high school with Nivens and had a social relationship with him over fifty years before the Final Award. Commissioner Chick "had no actual knowledge of this case" but initially recused himself because "there may exist the appearance of impropriety because of my past acquaintance with employee." This admission in no way reflects that Commissioner Chick was not impartial, merely that he understood his involvement may have "the appearance of impropriety." Even had Commissioner Chick and Nivens shared a significantly closer relationship, it would not prevent the application of the Rule of Necessity. In *Barker*, the commissioner who invoked the Rule of Necessity to break a tie had previously represented one of the parties as their lawyer. *Barker*, 752 S.W.2d at 439. In *Jennings*, the commissioner who initially recused himself because he was a former partner in the law firm representing one of the parties, properly invoked the Rule of Necessity and participated in the final award. 196 S.W.3d at 556 n. 8. The same was discussed in *Stonecipher v. Poplar Bluff R1 School District*, 205 S.W.3d 326, 328, 333 (Mo. App. S.D. 2006), although ultimately the court declined to resolve the question and instead reversed based on the scope of the commission's review. Recusal to avoid the appearance of impropriety does not automatically equate to a person being incapable of being impartial. Further, the Rule of Necessity by its very terms only exists to be used when a judge may otherwise have a conflict in participating in an adjudication.

The Fund continually notes that the Commissioners acted in "haste" in issuing the Final Award because it was issued only forty-one days after the case was submitted. But, as Interstate Brands points out, this ignores the fact that the case had been fully briefed before the Commission for nearly five months waiting on other issues which had to be decided before the case could be finally submitted. More importantly, this Court will not create an arbitrary waiting period for cases to be under submission before they can be ruled upon. The parties on both sides of every legal action deserve to have their claims resolved expeditiously. There is no allegation or indication that the Commission failed to adequately examine and consider the record in a rush to judgment. The Fund implies that the failure to hold a hearing where there was dissention amongst the Commissioners was imprudent but while the Fund may have preferred to have a hearing, the Commission's failure to hold one does not amount to error, nor is such an error properly raised before this Court. *See* section 287.480 (full commission "shall review the evidence, or, *if considered advisable*, as soon as practicable hear the parties at issue, their representatives and witnesses . . . .")

The Fund's assertion that the Rule of Necessity should only be invoked after the Commission has allowed an arbitrary amount of time to pass after the case is submitted is not reasonable. On the record before this Court, the Commission was deadlocked and there was no other mechanism available to decide the case. There exists no strict period for which an adjudicating body must wait before the Rule of Necessity may be invoked, nor will we create such an arbitrary requirement. We find the Commission did not err in invoking the Rule of Necessity to enter the Final Award.

**II.**

The Fund's second point on appeal alleges that the Commission erred in entering the Final Award because the award is against the weight of the evidence in finding that Nivens was unemployable on the open labor market. The Fund alleges that there was insufficient evidence of permanent total disability when considering Nivens's primary injury and his preexisting conditions as they existed on February 7, 2008. In support the Fund points to what it alleges are contradictory opinions of the Commission finding that Nivens's preexisting conditions both were and were not hindrances or obstacles to employment.

As noted above, this Court is limited in its review of a final award to four particular grounds. Section 287.495.1. This challenge is brought under subsection four, "[t]hat there was not sufficient competent evidence in the record to warrant the making of the award." Section 287.495.1(4). "A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent substantial evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is 'irrelevant.'" *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 922 (Mo. App. S.D. 2017) (quoting *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). "Sufficient competent evidence is a minimum threshold and can be satisfied by the testimony of one witness, even if there is contradictory testimony from other witnesses." *Robinson v. Loxcreen Co.*, 571 S.W.3d 247, 249 (Mo. App. S.D. 2019) (internal quotation omitted).

In determining the validity of a challenge under section 287.495.1(4), this Court follows a specific analytical framework. The Southern District of this Court has recently

10

streamlined the analytical framework by combining steps two and three. *Robinson*, 571 S.W.3d at 250-51. We find that the condensed process more clearly reflects the facts of this case and thus choose to adopt this framework:

1. Identify a factual proposition necessary to sustain the Commission's result;

2. Marshal all evidence in the record supporting that factual proposition, subject to the Commission's authorized factual and credibility determinations, explicit or implicit, and viewing the record objectively where there were no explicit or implicit findings;

3. Demonstrate why the evidence from the second step lacks sufficient probative force on the issues, such that the Commission could not have reasonably believed the factual position set forth in step one.

*Id.*

In this case, the proposition that the Fund challenges is that there was insufficient competent evidence to find that Nivens's 2008 Knee Injury, combined with his preexisting conditions, were such a hindrance or obstacle to employment that Nivens was totally and permanently disabled. The Fund contends either that the preexisting injuries were not a sufficient obstacle to establish total disability or that the Commission improperly considered subsequent injuries or deterioration of past injuries in determining Nivens's employability on the open labor market.

**A. Preexisting Conditions**

Nivens testified that his workplace injuries date back to the 1970s when he was working for Fechtels as a deliveryman and route salesman. While working there he injured his back while lifting beer kegs into a cooler. He was hospitalized and placed in traction. Nivens received workers' compensation benefits stemming from that accident although the

11

records could not be located due to the passage of time since the claim. Nevins continued to work, eventually working as a delivery driver for Interstate Brands. Nivens testified that he had "constant back pain all the time" for which he took Tylenol. In September 2005, Nivens sought additional treatment and, following an MRI, he was diagnosed with a bulging disc. At the time he rated the pain at an eight on a scale of zero to ten. He received two epidural steroid injections in his back. Nivens testified that he continued to perform his job, but that it took him longer to complete certain tasks.

Nivens injured his right knee in 1986 while working for Interstate Brands. He slipped on a greasy floor while at work and chipped a bone in his right knee, ultimately resulting in a permanent disability rating of five percent of his leg at the knee. Nivens sought treatment for additional knee pain in 2005 unrelated to a specific injury. At the time Nivens rated the pain at an eight on a scale of zero to ten. An MRI indicated that he had a tear of the anterior horn and knee sprain. Nivens chose not to have surgery but said that his knee injury affected his ability to push and pull.

Nivens also suffered from a heart condition, atrial fibrillation. It exhibited with shortness of breath and Nivens testified that, as a result, he had to take smaller loads while making his deliveries. He also had fluid retention in his lower extremities and had difficulty squatting and getting up and down. He testified that his heart condition limited how much he could lift or push although no doctor had placed specific restrictions on his physical activity.

Most notably, Nivens injured his left wrist in 2007 ("2007 Wrist Injury"). Nivens was delivering bread when he fell on ice in front of one of the stores. He hit his left wrist

12

and right knee as well as his chest. He had surgery on his left wrist to repair tears to the ligaments. He was released from care with a permanent disability rating of six percent of the left arm at the wrist. Nivens also testified that, following the accident he had constant pain in his right knee, although he admitted that he suffered from constant pain in that knee before the 2007 accident.

## B. Inability to return to the Workforce

The term "total disability" means the "inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6. Permanent total disability arises when the employee's injury is such that the employee has become permanently unemployable on the open labor market and is entitled to benefits through the remainder of the employee's lifetime. Sections 287.020, 287.220; *Archer v. City of Cameron*, 460 S.W.3d 370, 375 (Mo. App. W.D. 2015). "If a claimant establishes either (1) that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or (2) that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, then the Fund is liable for that portion of disability that is attributable to the preexisting condition." *Lawrence*, 470 S.W.3d at 13. "The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work." *Lewis v. Treasurer of State*, 435 S.W.3d 144, 159 (Mo. App. E.D. 2014) (quoting *Highley v. Von Weise Gear*, 247 S.W.3d 52, 55 (Mo. App. E.D. 2008)).

13

The Final Award finds that Nivens's "testimony regarding his disabilities and his inability to remain in the workforce is found credible as are the opinions of Nivens'[s] treating and evaluating physicians, particularly Doctors Cohen and Lux." Nivens testified that he can only stand for periods of 15 to 20 minutes. Additionally, if he sits for a long time he will be in additional pain. He testified that he ultimately retired in 2008 because he was unable to do his job without the assistance of another person and his employer was no longer going to allow him to have an assistant. Nivens testified that he would not be able to perform any of the jobs suggested by the vocational rehabilitation consultants for the Fund because of his physical limitations and his lack of training. Specifically his inability to stand or sit for prolonged periods, his lack of training to operate a computer or type on a keyboard, and his lack of ability to operate a cash register due to his wrist injury.

Doctor Raymond Cohen ("Dr. Cohen") testified that Nivens had a rating of 35 percent disability to the body as a whole due to his atrial fibrillation beginning in 2005. This condition limited his physical activity and his heart medication, a blood thinner, put him at risk for greater injury. Additionally, Dr. Cohen believed that Nivens had a 15 percent permanent partial disability to the body as a whole due to his preexisting back conditions and five percent permanent partial disability due to his preexisting right knee condition. Dr. Cohen believed that these prior disabilities combined with the 2008 Knee Injury rendered Nivens permanently and totally disabled. It was Dr. Cohen's opinion that Nivens would not be able to work even 20 hours per week.

An opinion letter of Doctor Paul Lux ("Dr. Lux") was admitted into evidence regarding his examination of Nivens. Dr. Lux stated that Nivens was treated appropriately

14

and adequately by his treating physicians but that he continued to have knee pain which affected his employability. Dr. Lux stated that "it is going to be very difficult for [Nivens] to be employed in any type of job that requires any type of activity and [I] agree with Dr. Cohen's assessment of his restrictions."

The Commission also found credible the testimony of Gary Weimholt ("Weimholt"), a vocational rehabilitation consultant who testified that Nivens was not placeable or employable in any occupation that he was qualified to perform because of the physical limitations due to his injuries. Weimholt believed when considering Nivens's injuries to his left wrist, right knee, and heart problems, when combined with his age and job qualifications, there were "no jobs that are available to him in significant numbers . . . to allow him to be reemployed in regular competitive employment." Following the knee injury, Nivens was restricted from repetitive use of his wrist, lifting greater than five pounds, no repetitive gripping or grasping or bending of the left wrist, he also was restricted from certain types of stress, lifting and pushing due to his heart condition.

**Opposing Testimony**

The Fund spends the bulk of its argument pointing out the testimony of its own vocational experts and doctors asserting that Nivens was not permanently and totally disabled. However, we defer to the credibility determinations of the Commission and the Final Award expressly finds that Weimholt's testimony regarding Nivens's inability to return to work was credible. As noted above, our review is not to reweigh the evidence, the Fund only succeeds if it can demonstrate the "absence of competent substantial evidence" to support the award. Contrary evidence is ultimately "irrelevant."

15

The Fund also seeks to discredit the testimony of Nivens regarding his preexisting conditions. The Fund notes that during his treatment for various injuries, Nivens often did not report to his doctors that he had prior or preexisting medical problems. The medical charts indicate that when he was evaluated for his 2007 Wrist injury, he told the doctor that he had no prior knee pain. A similar statement of no prior knee problems except for minor aches and pains appears in the medical records regarding Nivens's treatment for his 2008 Knee Injury. Nivens also testified in his deposition that he had never had any problems with either of his knees before his 2007 and 2008 injuries.

While we agree that these statements are contradictory, the Final Award found Nivens's testimony regarding his injuries and his limitations resulting therefrom to be credible. Further, the record itself reflects that Nivens was incorrect in his statements to these physicians that he did not have prior injuries. The record contains evidence establishing that Nivens injured his right knee in 1986 and had a worker's compensation permanent disability rating of five percent. His medical records also contained MRIs from his 2005 injury showing injury to that joint. We defer to the Commission on its findings of credibility and the record does not reflect that it is against the weight of the evidence to do so.

**Contradictory with 2007 opinion**

The Fund also alleges that Nivens's inability to reenter the workforce is not supported by substantial evidence because when considering Nivens's claim that the 2007 Wrist Injury was the primary injury, the Commission found:

16

Nivens provided evidence of a prior lower back injury, a prior right knee injury, and a prior cardiac condition; however, none of these conditions were significant enough to be a hindrance or impediment to employment where Mr. Nivens testified that for years he was able to perform the significantly strenuous work at Interstate Brands while only using Tylenol for back pain and slightly modifying the manner in which he made deliveries to minimize exertion.

*Nivens v. Interstate Brands Co.*, Injury No. 07-002739, (LIRC August 2018). We do not believe that this finding regarding the preexisting conditions when considered with only the wrist injury leads to a necessary conclusion that the conditions are not a hindrances to employment when combined with both the wrist injury and the 2008 Knee Injury. The Commission found that Nivens was 35 percent permanently disabled from his 2008 Knee Injury. The knee injury prevented him from doing any job that required standing for longer than 10 to 20 minutes. Because he could not sit for long periods due to his prior back injury, the addition of the 2008 Knee Injury foreclosed him not just from obtaining jobs that required sitting but also jobs that required standing. It was not inconsistent for the Commission to find that the preexisting conditions--especially the back injury that prevented him from sitting for long periods--became hindrances or obstacles when combined with a knee injury that prevented standing, while they were not so limiting when combined with a wrist injury.

**Improper use of later injuries and deterioration**

Finally, the Fund alleges that the Commission erred because it improperly used subsequent injuries to Nivens's primary injury and deterioration caused by prior injuries to determine that he was total disabled. Increased disability caused by post-accident worsening of preexisting disease when that worsening was not caused by or aggravated by

17

the last injury should not be considered when determining total disability. *Lawrence v. Joplin R-VIII Sch. Dist.*, 834 S.W.2d 789, 793 (Mo. App. S.D. 1992).

Nivens retired in 2008 following his return to work after his 2008 Knee Injury. Nivens testified that he was no longer able to do his job without the assistance of another person and Interstate Brands was no longer willing to provide an assistant. The Fund points out that between his retirement in 2008 and the Final Award in 2018, Nivens had bilateral foot surgeries, a left ankle tendon surgery, deep vein thrombosis, and a pulmonary embolism. Doctor David Clymer's ("Dr. Clymer") testimony was offered by Interstate Brands. Dr. Clymer medically restricted Niven's ability to walk for long periods but only did so nine years after the 2008 Knee Injury and as a result of a degenerative process, Nivens's morbid obesity, his lower extremity edema and venous stasis disease. The Fund notes that these were the only formal restrictions a physician placed on Nivens's physical exertion. This testimony, however, does not demonstrate that Nivens was not permanently and totally disabled in 2008 at the time of the Final Award. It simply means that Nivens continued to have additional unrelated health issues after his primary injury. This does not require a factual finding that Nivens was employable on the open labor market in 2008.

Further, there is no evidence that the Commission relied on these later surgeries, degenerations, or limitations when finding Nivens totally disabled. By its express terms the Final Award was based on "the 2008 injury to the right knee, the 2007 injury to the left wrist, and the preexisting cardiac, low back, and right knee conditions." There is no evidence that the post-primary injury health issues were used by the Commission in determining the disability.

18

The Fund puts great weight on the fact that no physicians placed formal work restrictions on Nivens. That does not necessitate a finding by the Commission that Nivens was able to work without limitation. The Commission expressly believed the testimony of Nivens, Dr. Cohen, Dr. Lux, and Weimholt that Nivens was incapable of being employed on the open job market. Those witnesses presented sufficient evidence that, even if physicians had not placed formal limitations on Nivens, the realities of his injuries forced Nivens to severely limit certain actions due to pain or overexertion.

> Section 287. 200.1 does not require a claimant to distinguish each disability and assign a separate percentage for each of several pre-existing disabilities to prevail on a claim for permanent total disability . . . . Rather, a claimant must establish the extent, or percentage, of the permanent partial disability resulting from the last injury only, and prove that the combination of the last injury and the pre-existing disabilities resulted in permanent total disability.

*Lewis*, 435 S.W.3d at 157 (quoting *Knisley v. Charleswood Corp.*, 211 S.W.3d 629, 635 (Mo. App. E.D. 2007)). It was sufficient for the Commission to find that the 2008 Knee Injury rendered Nivens 35 percent permanently disabled and that his preexisting conditions which might not have combined to create a significant hindrance or obstacle to employment with the 2007 Wrist Injury, did combine to render Nivens permanently and totally disabled when considered with the knee injury.

## III.

Nivens cross-appealed the Final Award contending that, in the event this Court found that the Commission erred in finding that his 2008 Knee Injury combined with preexisting injuries to render him permanently and totally disabled, then the Commission also erred in failing to find that his 2008 Knee Injury when considered alone was sufficient

19

to render Nivens permanently and totally disabled. Because we find that the Commission did not err in finding that the 2008 Knee Injury combined with preexisting disabilities rendered Nivens permanently and totally disabled, we do not need to address Nivens's cross-appeal.

## Conclusion

For the reasons stated above, the Commission did not err in entering its Final Award finding the Fund liable and Nivens to be permanently and totally disabled as a result of the combined injuries. We affirm.

_____
Gary D. Witt, Judge

All concur