**WOODMAN ENGINEERING COMPANY**
et al., Respondents,

v.

James J. **BUTLER**, Lawrence Presley and Carl J. Brown, Members of and comprising the Industrial Commission of Missouri, Department of Labor and Industrial Relations, Appellants.

No. 25050.

Kansas City Court of Appeals.

Missouri.

April 7, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1969.

Application to Transfer Denied
July 14, 1969.

Lloyd G. Poole, Jefferson City, Counsel, Industrial Commission, Norman H. Anderson, Atty. Gen., William L. Culver, Asst. Atty. Gen., Jefferson City, for appellants.

Hendren & Andrae, Jefferson City, for respondents.

MAUGHMER, Commissioner.

The Industrial Commission of Missouri, Department of Labor and Industrial Relations, appeals from the judgment of the Circuit Court of Cole County, Missouri, which "reversed and remanded for further consideration" nine Prevailing Wage Determinations made by the Commission under the Prevailing Wage Law (Sections 290.210 to 290.310 V.A.M.S.). The respondents include the Mechanical Contractors Association of Jefferson City, Missouri and four contractors—all of whom are members of that organization. The parties concede that jurisdiction is in this Court, and the Supreme Court in United Brotherhood of Carpenters, etc. v. Industrial Commission, 352 S.W.2d 633, held that jurisdiction to review wage determinations under the Prevailing Wage Law rested with the Courts of Appeal.

It is the policy of the State of Missouri that "a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed, shall be paid," Section 290.-220 V.A.M.S. Such a wage rate is required in the construction of public works, Section 290.230 V.A.M.S. The Industrial Commission, Department of Labor, shall determine and ascertain such prevailing wage rates, Section 290.250 V.A.M.S. The Department shall annually, about July 1st, and from time to time "investigate and determine the prevailing hourly rate of wages in the localities * * *"; "in determining prevailing rates, the department shall ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and the rates that are paid generally within the locality," Section 290.260(1) V.A.M.S. The decision of the Department "is subject to review in accordance with the provisions of chapter 536, RSMo", Section 290.260(7) V.A.M.S. On such review the Court must determine if the decision of the Department is "supported by competent and substantial evidence on the whole record." That is the main issue which was before the Circuit Court and the main issue which is before this Court.

The petition for rehearing before the Commission was timely filed and by that body denied in a 2-to-1 decision. The application for review by the Circuit Court and the appeal to this Court were duly presented.

Included in the construction contracts to which the wage determinations were to apply were: a steam line extension at Lincoln University; a communications classroom at Lincoln University; an extension to a toilet room in the Missouri State Capitol Building; a site improvement contract for the Housing Authority; construction of a clearwell for the State Capitol complex; plumbing and electrical work, 6th Floor, Division of Health office building; installation of air conditioning equipment at Lincoln University; and some electrical work at Room 102, State Capitol Building. The ninth job was apparently a contract pertaining to the construction of the Van Hoffman Printing Plant.

Each of the nine wage determinations insofar as this appeal is concerned, fixed the prevailing hourly wage rate for the craft of "pipefitters". The Commission in each of these determinations set such wage rate as follows:

Hourly rate—$5.71.

Overtime—double the hourly rate.

Fringe benefits—$1.57½ per hour.

The Mechanical Contractors Association of Jefferson City, Missouri, one of the respondents here, and of which organization, the successful bidders on all nine of the above contracts, were members, had entered into a written agreement with the Plumbers and Pipefitters Local No. 279 of Jefferson City, Missouri. This agreement was made on April 19, 1966, included Cole County, Missouri, (the County in which Jefferson City is located), was to be effective from April 25, 1966 through April 26, 1969, was received in evidence as Exhibit 1, and fixed the wage rate for pipefitters in that area as follows:

Hourly rate—$4.68 from July 1, 1966 to January 1, 1967,

Hourly rate—$4.93 from January 1, 1967 to July 1, 1967,

Hourly rate—$5.18 commencing July 1, 1967, with no termination date specified, and

Fringe benefits—23¢ per hour.

Exhibit No. 2 was an agreement entered into by the Mechanical Contractors Association of *St. Louis, Missouri* and the Pipefitters Association Local Union No. 562, St. Louis. It purported to cover wages to be paid to pipefitters from June 15, 1966 through June 14, 1967 for work done by that union in the City of St. Louis and various named counties in eastern and central Missouri including Cole County. The wage provided therein was $5.71 per hour plus fringe benefits.

At the hearing before the Commission on the Exceptions, additional Exhibits were received in evidence. We shall name and briefly describe the contents of some of them.

Exhibit 4, prepared by Mr. Freeman, Chief Inspector for the Commission, listed eleven men who were employed in Cole County, on January 1, 1966 as pipefitters —all except one being paid the Union 279 rate. Mr. Freeman procured this list from Mr. Binney, the business agent of the Jefferson City Union. He did not attempt to contact the contractors in Jefferson City and secure such listings from them.

Exhibit 5 is a list of men who on March 28, 1967 were working at the wages provided in the 279 Union Agreement. Nine men on this list were described as pipefitters. Again the list was procured from Mr. Binney, business agent for the local union. It did not include any pipefitters employed on the Cheesebrough job.

Exhibit 9 lists the names of eleven men who were employed in Cole County from January 1, 1967 to March 28, 1967 under the 279 rate, as furnished by Mr. Binney.

Exhibit 3 purports to be a list of forty-eight persons who were employed on July 1, 1966 as pipefitters on the Cheesebrough plant by Natkin & Company. However, Mr. Freeman testified that it is actually a list of the men who on the date specified were being paid at the rate of $5.71 per hour. He said this rate applied to plumbers and foremen, as well as pipefitters. It is not apparent, therefore, exactly how many of these forty-eight were pipefitters.

Exhibit 8 purports to be a list of sixty men who were employed on August 23, 1966, as pipefitters on the Cheesebrough plant and were paid $5.71 per hour. It was made up and given to Mr. Freeman by Mr. Selby of Natkin & Company. Again it merely lists those who were paid $5.71 per hour and includes plumbers, pipefitters and foremen. Exhibit 10 is identical with Exhibits 3 and 8 except the total number of employees is twenty-one, and the date is March 28, 1967. Mr. John R. Freeman, Inspector, was the only witness who testified at the hearing.

The nine determinations of the Commission which are the subject of this appeal, were entered during January, February or March, 1967, fixed the wage rate at $5.71 per hour, with an overtime rate of double time, plus fringe benefits of $1.57½ per hour. This rate accords with the agreement made with Local 562, St. Louis, and is substantially in excess of the rate pro-

vided in the agreement made with Local 279. The Exceptors claim that the latter wage or the one made with the Jefferson City union should have been determined to be the prevailing wage.

The contractors or Exceptors claim that (1) the determinations entered by the Commission are not supported by competent and substantial evidence upon the whole record; (2) the Commission did not consider the applicable rates as established by collective bargaining agreements in the area as required by Section 290.260, supra, and (3) the Commission failed to consider wages paid on comparable construction projects in that locality. Exceptors also assert that the Commission collected evidence after the exceptions were filed and used such evidence to support the determinations made earlier, and that the project on which the wage determinations were really based was a "highly complicated industrial plant" and not similar to the ordinary public works projects in the area. We do not believe the evidence introduced sustains the latter point. As to the other, we believe the Chief Investigator in his testimony mostly correlated the results of his earlier investigations. In any event the Commission had such evidence before it, when the Final Determinations were made.

We shall try to summarize the occurrences in this matter chronologically or as nearly so as possible. On or about July 1, 1966, the Commission issued a Prevailing Wage Determination covering wages to be paid to pipefitters in Cole County, Missouri for the year ending June 30, 1967. This Determination set an hourly rate of $4.47 plus fringe benefits of 21¢. This was the same rate which was in effect at the time under the bargaining agreement with Local Union 279. Such written Wage Determination was not placed in evidence, but Mr. Freeman, Chief Investigator for the Commission, conceded such was the fact. About July 1, 1966, Natkin & Company (apparently a St. Louis construction organization) or possibly prior thereto, began construction of the Cheesebrough Pond's industrial plant in Jefferson City, Missouri, and paid the pipefitters, plumbers and foremen on that job $5.71 per hour, plus the fringe benefits as provided in the St. Louis Union 562 agreement. There is nothing in the law to prevent a contractor from paying more than the prevailing wage. Such Determinations are, in effect, a floor rather than a top for wages.

Mr. John R. Freeman, Chief Inspector for the Industrial Commission, Prevailing Wage Section, testified at the hearing on the exceptions before the Commission. The investigations made by him and his staff, as related by him, indicated and revealed that the $5.71 wage as provided in the Union 562 agreement was being paid on the Cheesebrough project, and to two employees who were temporarily working at St. Mary's Hospital. Mr. Freeman was told by a Mr. E. W. Geising, Superintendent of Natkin & Company, and by a Mr. Selby, Project Manager for Natkin & Company, that forty-eight plumbers and pipefitters were working on the Cheesebrough job as of July 1, 1966, sixty as of August 23, 1966, and twenty-eight on March 28, 1967. No designation was made as to how many of these employees were pipefitters, how many were plumbers and how many were foremen. However, all three of these types, plumbers, pipefitters and foremen were paid $5.71 per hour.

Neither Mr. Freeman, his staff, nor anyone for the Commission, made any investigation or inquiry from the twenty-five plumbing, heating and air conditioning equipment firms located in Jefferson City, which frequently employed pipefitters, in an effort to determine what wages they were paying early in 1967 or at any time after July 1, 1966. Except for Natkin & Company, contractor on the Cheesebrough job, and the two pipefitters working at St. Mary's Hospital, no investigations were made, and so far as the record shows, no efforts were made to determine what wages were paid by other contractors in the locality at the time.

Exceptors presented and there was received in evidence, by stipulation, Exhibit A. Exhibit A is a compilation of the wages paid for work performed from May 1, 1966 until April 19, 1967, the date of the hearing, by the Mechanical Contractors Association of Jefferson City, Missouri, in Cole County, Missouri. It discloses that during that period a total of $3,925,790.31 in wages were paid. The exhibit does not indicate what proportion of these wages were paid to pipefitters, but it does set forth that the pipefitters were paid wages in accordance with the Union 279 agreement. The exhibit further shows that from September 1, 1966 to May 31, 1967, the amount of building permits issued by Jefferson City, except public works, totalled $338,386.00 residential, and $5,374,850.00, commercial, and that on these projects wages were paid at the Union 279 rate. The total cost of the work on the Cheesebrough job and performed by Natkin & Company totalled $1,300,000.00. None of these compilations segregate the amount of wages paid to pipefitters alone.

Additionally, this Exhibit A lists the prevailing wage during the period for pipefitters and plumbers in Moniteau, Miller, Camden, Osage, Boone, Cooper, Callaway and Howard Counties—all in the Cole County locality. Such wages are substantially the same as provided in the Local 279 agreement. Exhibit A also reveals that the United States Department of Labor on February 23, 1967, made a Wage Determination covering a housing and urban development at Lincoln University, and fixed the hourly rate for plumbers and pipefitters in accordance with the provisions of the Union 279 schedule.

The Circuit Court entered the following Findings of Fact with which we agree: (1) On or about July 1, 1966, the Commission issued a Wage Determination as to the wages which were to be paid to pipefitters in Cole County, Missouri, for the year ending June 30, 1967, and the rates were the same as those set forth in the Union 279 agreement; (2) That the Commission determined the prevailing wage to be paid on the Cheesebrough construction to be the same wage as contained in the No. 279 agreement; (3) That prior to January 1, 1967, the Commission determined the prevailing wage for pipefitters in Cole County to be the same as contained in the Union 279 agreement; (4) That Natkin & Company, contractor on the Cheesebrough job, voluntarily paid a higher wage than was required; (5) That wage rates for pipefitters from May 1, 1966 to April 19, 1967 on jobs in Cole County, totalling $3,925,790.31 in labor costs of all kinds, were on the Union 279 schedule; (6) That from July 1, 1966 to July 1, 1967, the wage rate paid to pipefitters in Cole, Moniteau, Miller, Camden, Osage, Boone, Cooper and Callaway Counties were rates comparable to those prescribed in the 279 agreement; and (7) That the final determination of the Commission was based entirely upon the wages paid on the Cheesebrough job and to the two workmen on the St. Mary's Hospital project. The Commission apparently made no investigation or inquiries as to wages paid to pipefitters from May 1, 1966 to April 19, 1967 in Cole County (Circuit Court Finding #5). The Commission apparently made no inquiries nor exerted any effort to determine what wages from July 1, 1966 to July 1, 1967 were being paid or had been paid in eight named counties in the locality of Cole County (Circuit Court Finding #6). It seems quite clear that the Commission gave little consideration and accorded practically no weight to the elements inherent in Findings 1 to 6, inclusive, of the Circuit Court.

■ In the briefs Appellants assert many times that on appeal neither this Court nor the Circuit Court may substitute its judgment on the facts for that of the Commission. We agree. The rule was well stated in United Brotherhood of Carpenters v. Industrial Commission, Mo.App., 363 S.W.2d 82, 89:

"The function of the reviewing court in this case is to decide if the determination

of the Commission was authorized by law and was supported by competent and substantial evidence upon the whole record. In so doing, it may determine whether the Commission could reasonably have made its findings and reached its results upon consideration of all the evidence before it. A decision clearly contrary to the evidence should be set aside. Art. V, Sec. 22, Const. of Mo. 1945, V.A.M.S." and cases cited.

■ However, all pertinent evidence and factors must be considered in determining the applicable prevailing wage. This principle was clearly declared by the Supreme Court en banc in City of Joplin v. Industrial Commission, 329 S.W.2d 687, 695:

"* * * The Act makes it clear that all relevant factors are to be considered in determining the prevailing wage applicable to any contract or project; for example, Sec. 290.260, subd. 1 provides that in determining prevailing rates the commission shall 'consider the applicable wage rates established by collective bargaining agreements, if any' and also 'such rates as are paid generally within the locality.' It makes neither conclusive. Our conclusion is that the trial court could properly find that the commission failed to consider all applicable factors. * * *"

And in State ex rel. Missouri Water Co. v. Public Service Commission, Mo., 308 S.W. 2d 704, 720, the Court held that it was improper to make a rate return evaluation without giving any consideration to evidence relating to present "fair value". The Court further said that a proper determination must be based upon all relevant factors and because of failure to do so, the order of the Commission was "neither authorized by law nor supported by competent substantial evidence upon the whole record."

■ It is our belief that the Commission in making the nine Wage Determinations before us in this appeal, investigated and considered only the wages paid by Natkin & Company on the Cheesebrough job and to the two employees on the St. Mary's Hospital project; that the wages paid on Cheesebrough were in excess of the rates determined by the Commission at and prior to the commencement of work on that project, and in excess of the wages prevailing in the locality. We further believe that the investigations made and the evidence gathered were insufficient in both depth and scope to justify the changes made. We believe too, that the Commission gave little or no consideration to the wage agreement entered into by Exceptors and Labor Union 279. The Commission is squarely required by the statute to give consideration to such agreements, Section 290.260(1) V.A.M.S. This being so, any judgment which does not give consideration to such agreements should not be ruled to be a judgment that is supported by "competent and substantial evidence upon the whole record." We so rule in this case.

Secondly, the evidence as described by the Circuit Court, and as recited in this opinion, should have been and must be considered and weighed by the Commission in establishing its "Wage Determinations for the Cole County area." Failure to base the "Final Determinations" upon all relevant factors and after consideration of all proper and pertinent evidence, makes the order one that is "neither authorized by law nor supported by competent substantial evidence upon the whole record." City of Joplin v. Industrial Commission, supra.

It is our opinion that the judgment of the Circuit Court was proper. We affirm such judgment. The Wage Determinations involved herein are set aside. The Circuit Court is directed to remand the cause to the Industrial Commission with directions to make new Determinations. Such new Determinations are to be made in accordance with the views expressed herein. We do not direct the Commission to make any specific findings—only to consider all the

evidence and make its investigation wide enough and deep enough so that fair Determinations can be made.

The judgment of the Circuit Court is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., CROSS, J., and PHIL H. COOK, Special Judge, concur.

SHANGLER, J., not participating because not a member of the Court when case was submitted.