UNION ELECTRIC COMPANY, ACF Industries, Inc., et al., and ABEX Corporation, et al., Appellants,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri and Commissioner Alberta Slavin, Respondents.

No. WD 30791.

Missouri Court of Appeals, Western District.

Oct. 29, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 3, 1979.

Application to Transfer Denied · Jan. 15, 1980.

William E. Jaudes and Paul A. Agathen, St. Louis, for Union Electric Co.

Robert C. Johnson, St. Louis, for ACF Industries, Inc.

David F. Crossen, Clayton, for ABEX Corp.

Paul W. Phillips, Jefferson City, for Public Service Com'n.

James S. Haines, Jr., Jefferson City, for Com'r Alberta Slavin.

Before WASSERSTROM, C. J., and SHANGLER, PRITCHARD, DIXON, SWOFFORD, SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

Union Electric and several industrial intervenors filed a petition for writ of prohibition in the Circuit Court of Cole County seeking to prohibit Alberta Slavin, a member of the Public Service Commission, from participating in a certain proceeding involving the rate design for Union Electric. The same parties sought to prohibit the Public Service Commission from allowing Slavin to participate. The court on final hearing denied both petitions and entered summary judgment [1] in favor of Slavin and the Commission by quashing the preliminary rule previously issued. Union Electric and the industrial intervenors have appealed. Reversed and remanded.

The facts were largely stipulated and the only contested issue in the circuit court was the authority of the court to issue a writ of

1. Slavin and the Commission filed motions for judgment on the pleadings. However, oral evidence was heard and voluminous records were presented by stipulation to the court. When matters outside the pleadings are presented to the court and not excluded the motion for judgment on the pleadings is treated as one for summary judgment. Rule 55.27(b). Thus, the motions here are treated as motions for summary judgment.

prohibition against Slavin or the Commission absent any statutory provision for the disqualification of a member of the Commission.

The parties stipulated that Union Electric had filed an application for a rate increase with the Commission in 1972. An intervenor-party in that case was a consumer oriented corporation in St. Louis known as Utility Consumers Council of Missouri, Inc., known by the acronym UCCM. Slavin was one of the three incorporators of UCCM, a member of the board of directors, the registered agent at her home address, and president for seven years. The petition on behalf of UCCM to intervene in the rate case was signed by Slavin.

After a settlement had been reached in the rate case, a cost of service study was discussed with Slavin participating in some of the meetings. A cost of service study was launched by Union Electric to determine the cost to Union Electric for delivery of its electric service to the various classes of consumers, i. e. residential, commercial and industrial. This study would in turn form the basis for an allocation of the rate increase among the various classes of consumers. The interest of UCCM in the cost of service study was made apparent by Slavin in her statements that residential users were paying too much for their service and that a greater proportion of the rates should be paid by other users, particularly industrial.

In 1974 the Commission ordered that the cost of service study be thereafter handled in a new docket designated as No. 18177. UCCM and Slavin individually were both parties in No. 18177, and, in fact, both filed a motion for extension of time in that proceeding. Later a joint memo regarding data collection procedures for the cost of service study in No. 18177 was filed by Union Electric and UCCM.

In June, 1977, Slavin resigned as president and as a member of UCCM. On July 8, 1977, Slavin was appointed as a member of the Public Service Commission by the Governor. She resigned on August 22, 1977, but was again appointed to the Commission on November 22, 1977, and took the oath of office on November 23, 1977. The registered office of UCCM continued to be listed at Slavin's home address in St. Louis until January, 1978, although she was not active in the organization after her resignation from it in June, 1977.

In January, 1978, Union Electric filed its cost of service study in No. 18177 and the Commission ordered that case closed out and opened case number EO78–163. The Commission ordered that all parties to No. 18177 be declared to be parties to No. EO78–163. Slavin was shown in the order to be a member of the Commission but absent.

In June, 1978, Union Electric and the industrial intervenors filed a motion with the Commission asking that Slavin be disqualified from participating in case No. EO78–163. Slavin wrote a letter in response to the motion stating the motions to disqualify her were without merit and refusing to disqualify herself. The Commission entered an order finding it did not have jurisdiction to determine whether or not a member of the Commission was disqualified from participating in a case. Slavin did not participate in that order.

In July, 1978, UCCM filed a motion to request hearings to be held in the service area of Union Electric in case No. EO78–163. This suit for prohibition against Slavin and the Commission was filed on July 13, 1978. The petition alleged Slavin should be disqualified because of her interest, bias and prejudice as shown by her previous participation in this case and in other cases involving Union Electric and because of her public statements on the merits of those cases.

A hearing was held on the petition for prohibition with the only evidence, in addition to that stipulated, relating to the nature of the cost of service study and brief testimony by Slavin in which she denied any ill will toward Union Electric or any of the industrial intervenors in the prohibition suit.

The trial court entered findings of fact and conclusions of law and concluded that because there is no statutory provision for the disqualification of a member of the Commission, the court was without power or authority to order a member of the Commission to refrain from participating in any case pending before the Commission. The court indicated the view that although it could not prohibit a member of the Commission from participating in advance, that the interest, bias or prejudice of a member would be a proper subject of inquiry in any appeal from a decision by the Commission and if it were shown that any party did not receive a fair and impartial hearing before the Commission relief could be granted at that time. The court dissolved the preliminary rule in prohibition issued against Slavin and the Commission and entered summary judgment pursuant to motions previously filed.

On this appeal Union Electric and the intervenors contend they will be denied due process if Slavin is not prohibited from participating in a case in which she is actually a party. Slavin contends prohibition will not lie to remove her in advance of a hearing but the matters complained of may only be considered on appeal after the Commission has entered an order in the pending case.

It is true, of course, that the Public Service Commission is an administrative body created by statute and has only such powers as are expressly conferred by statute and reasonably incidental thereto. *State ex rel. Harline v. Public Service Commission*, 343 S.W.2d 177, 181[5] (Mo.App. 1960). However, the courts in this state have held officials occupying quasi-judicial positions to the same high standard as apply to judicial officers by insisting that such officials be free of any interest in the matter to be considered by them. Thus, in *King's Lake Drainage & Levee Dist. v. Jamison*, 176 Mo. 557, 75 S.W. 679 (1903) the report of commissioners appointed by the county court to establish a drainage district was challenged because one of the three commissioners had an interest in a tract of land subject to overflow which was excluded from the district. The commissioner's wife was the owner of this tract and although the commissioner only had a marital interest the court held this was sufficient to violate the common law rule that no man is to be a judge in his own cause. The court expressly rejected a contention that such rule applied only to judicial officers and should not apply to quasi-judicial officers by stating such contention was not in harmony with the analogous decisions in this state and was not in line with the greater weight of authority in England and this country. The court carefully reviewed this well established rule and quoted liberally from Judge Cooley's work on Constitutional Limitations (6th Ed.). The court quoted from Judge Cooley that a legislative act which would undertake to make a judge qualified to decide his own controversy would be void because it would be the creation of an arbitrary and irresponsible authority unknown to constitutional government. The court further quoted that the rule applies in all cases where judicial functions are to be exercised and it is not left to the discretion of the judge, or to his sense of decency, to decide whether or not he shall act. The court further quoted from Cooley that it is the responsibility of the power which created the court to provide another judge or tribunal so that a judge may not in any event be placed in a position in which he can judge his own cause. The court held the commissioner whose wife owned the tract involved in the drainage area was not qualified to act, and even though he was only one of three, affirmed an order setting aside the report of the commissioners.

Much the same reasoning was applied by the Supreme Court of Ohio in *Forest Hills Utility Co. v. Public Util. Com'n of Ohio*, 39 Ohio St.2d 1, 313 N.E.2d 801 (1974) when it held a member of the Public Utility Commission who had participated in a case before becoming a member of the Commission should not have heard the case after becoming a member. The court relied on *Trans World Airlines v. Civil Aeronautics Board*, 102 U.S.App.D.C. 391, 254 F.2d 90 (D.C.Cir.

1958) in which it was held that an attorney who had been listed on the briefs in a case should not take part in that case after becoming a member of the board. The Ohio court adopted the reasoning of the court of appeals that fundamental requirements of fairness would not permit an attorney to later participate in the same case as a member of the administrative agency hearing the case. No statutory provision for disqualification was cited in either case.

A more recent application of the common law rule referred to in *King's Lake* is found in *American General Ins. Co. v. F.T.C.*, 589 F.2d 462 (9th Cir. 1979). There the court fully reviewed the common law rule that no man shall be a judge of his own cause and held that an attorney who had previously participated in a case was disqualified from passing on the same case after he became a member of the F.T.C. The sole basis of the court's ruling was the common law rule.

In *Jones v. State Dept. of Public Health and Welfare*, 354 S.W.2d 37, 40[2–3] (Mo. App.1962) this court quoted from 16A C.J.S. Constitutional Law § 628 p. 851 that "[t]he cardinal test of the presence or absence of due process in an administrative proceeding is  .  .  .  'the presence or absence of rudiments of fair play long known to the law.' " It was held this required a fair and impartial hearing officer.

■ In this case it is stipulated that Slavin was a party to case No. 18177, and that by order of the Commission in January, 1978, after she became a member of the Commission, case No. EO78–163 was opened and all parties to No. 18177 were made parties to No. EO78–163. By this order Slavin then became a party to a case pending before her as a member of the Commission. Under the common law rule applied in *King's Lake* to quasi-judicial officers, it is clear that Slavin should be disqualified

from judging her own case. This is true even though she was only one of five commissioners who have yet to make a final order in No. EO78–163. *King's Lake, supra; In Re Weston Benefit Assessment, Etc.*, 294 S.W.2d 353, 356[3] (Mo.App.1956).

Slavin argues she may not be prospectively disqualified because of the holding in *Rose v. State Board of Registration for Healing Arts*, 397 S.W.2d 570 (Mo.1965). In *Rose* the contention was made the entire board was disqualified because the charges were instituted, heard, and determined by the same entity and Rose was thereby deprived of due process. The court in *Rose* carefully noted no charge of interest or bias was made against any member of the board. The court considered the contention an attempt to disqualify the entire board so that without provision for another board or entity to hear the charges, Rose would of necessity be discharged. The court held the charges could not be avoided by such blanket disqualification. That case did not consider a challenge to an individual member of the board on a charge of interest or bias and so did not reach the problem here. Further, no attempt is made herein to disqualify the entire Commission.

The problem remains as to whether prohibition is available to prevent Slavin from participating in this case, or must the question of her disqualification await the final order in that case and be raised on appeal as a ground for setting aside the order.[2] The answer to this was provided in *State ex rel. McAllister v. Slate*, 278 Mo. 570, 214 S.W. 85 (banc 1919). In *Slate* an original proceeding in prohibition was filed in the Supreme Court against Slate, a circuit judge, seeking to prohibit him from exercising jurisdiction in a criminal case in which it was alleged he was interested, biased and prejudiced. The court held prohibition was

---

**2.** Union Electric and the intervenors stressed in oral argument that they do not have an adequate remedy by appeal on any order made by the Commission in this case because there is no statutory authority for a refund of rates paid under a Commission order even if that order is later set aside by a court. However, it is not necessary to base the right to prohibition on

the inadequacy of relief provided by appeal. Under *Slate*, Slavin is wholly lacking in jurisdiction to hear this case. In that situation it was held in *State ex rel. T. J. H. v. Bills*, 504 S.W.2d 76, 79 (Mo. banc 1974) that appeal is not an adequate remedy when the court is wholly wanting in jurisdiction.

proper and prohibited Slate from further proceeding with the case. One basis of the court's decision was the same common law rule considered in *King's Lake*. The court stated at 214 S.W. 91:

There is no manner of doubt that, if the circuit judge be in fact interested or prejudiced against the state, or shall have been a counsel for the defendant, he ought not to sit. This is obviously both the moral and ethical view, and the statute has enacted these moral and ethical views into a law. No man ought to be a judge in his own case, and a case wherein a judge is interested is one wherein to an extent and in effect the case becomes the judge's own case. The latter is merely an evolution of the above fundamental maxim.

The court stated the fact the legislature had made no law which provided details to govern the practice of disqualification of a judge in case of interest or bias would not prevent the court from prohibiting the judge to act in a case in which he was interested or prejudiced. The court concluded that since it found from the record that the judge did not possess an unprejudiced and disinterested state of mind, which is essential and necessary as a matter of right in the proper administration of justice, that it had the power both at common law and by statute to prohibit him from further exercising his jurisdiction in the case.

■ It is clear from *King's Lake, Forest Hills Utility Company*, and *American General Insurance* that the same standards and rules apply to quasi-judicial officers as to judicial officers. This means that members of the Public Service Commission may not act in cases pending before that body in which they are interested or prejudiced or occupy the status of a party. This is true under the common law rule that no man may be the judge of his own cause. As stated in *Jones* it is also a requisite of due process to which every party is entitled.

■ To a large extent the rights of consumers and regulated companies are determined by the Public Service Commission rather than the courts. To hold that a member of the Commission may not be disqualified for participating in a case in which that member is shown to be interested, biased, prejudiced or a party would be to deprive most of the citizens of this state of one of the most cherished attributes of our system of justice—to have his cause determined by a fair and impartial official. This right does not depend upon the legislature providing a procedure for the disqualification of a member of the Commission, rather it is woven into the very fabric of our system of justice. Absent a legislative procedure for disqualification of a member of the Commission, the courts will exercise their power to disqualify a member of the Commission upon a showing that a member is a party to a pending case, or is interested or prejudiced in the case. Thus, whether it be placed on the grounds of common law or due process, every party is entitled to have his case considered by a public service commission consisting only of persons who are not interested or prejudiced in the cause and who are not parties to the cause and prohibition is available to serve this right.

To allow Slavin to participate as a member of the Commission in case No. EO78–163 is to allow her to be the judge of her own cause, and because of this ground for disqualification, it is not necessary to decide if there is sufficient evidence of her bias and prejudice to require her disqualification on that ground. Under *Slate* prohibition will lie to prevent Slavin from further participating in her own case.

■ Of course, the legislature may desire to provide for the disqualification of members of the Public Service Commission, but absent such statutory provisions, such members are still prohibited by the common law from acting in matters in which they are a party, or are interested, biased or prejudiced.

■ The court granted summary judgment in favor of the Commission. There is no authority for the Commission to disqualify one of its own members, and under *Slate* any disqualification of a member would

have to be by prohibition in the circuit court. The judgment in favor of the Commission is affirmed.

The judgment granting summary judgment in favor of Slavin is reversed and the cause is remanded with directions to enter judgment making the preliminary rule in prohibition absolute prohibiting Slavin from attending or participating directly or indirectly in any further deliberations, proceedings, decisions or orders in case No. EO78–163.

All concur.