CENTRAL MISSOURI PLUMBING CO.,
et al., and Heart of America Chapter
of Assoc. Builders, Respondents,

v.

PLUMBERS LOCAL UNION 35, and La-
bor and Industrial Relations Commis-
sion, and State of Missouri, Appellants.

No. WD 50596.

Missouri Court of Appeals,
Western District.

Oct. 24, 1995.

Ronald C. Gladney, Brent J. Jaimes, Clayton, for appellant.

John W. Ellinger, Jefferson City, for respondent Central Mo. Plumbing Co.

Bradley G. Kafka, Clayton, for respondent Heart of America Chapter of Assoc. Builders.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

It is the policy of the State of Missouri that workers involved in construction of public works shall be paid at a wage rate which is at least as high as the prevailing hourly wage rate for work of a similar character in the same locality. Section 290.220, RSMo 1994.[1] Section 290.262 directs that the Department of Labor and Industrial Relations "annually investigate and determine the prevailing hourly rate of wages in each locality for each separate occupational title." An annual wage order is issued no later than July first of each year. Information on which to base the determination is gathered for each occupation in each locality. This case concerns a wage determination pertaining to plumbers in Cole County, Missouri.

On March 9, 1994, the Missouri Division of Labor Standards ("Division") issued Annual Wage Order No. 1, Section 26 ("Wage Order"), setting building construction rates for Cole County. The Division set the rate for plumbers at $16.00 per hour with no fringe benefit payments. Section 290.262 further provides:

3. At any time within thirty days after the certified copies of the determinations have been filed with the secretary of state and the department, any person who is affected thereby may object in writing to a determination or a part thereof that he deems objectionable by filing a written notice with the department, stating the specific grounds of the objection. If no objection is filed, the determination is final after thirty days.

On April 6, 1994, appellant, Plumbers Local Union 35 ("Local 35") filed an objection to the Wage Order, claiming that the proper wage rate for plumbers in Cole County should be established by its collective bargaining agreement.[2]

After the objection was filed, an evidentiary hearing was held before the Labor and Industrial Relations Commission ("Commission") on May 11, 1994. At the hearing, Mr. James Boeckman testified on behalf of the Division concerning procedures used by the Division to make a determination of wage rates. The Division gathers information on which to base its determination from many sources, telephone listings, Chamber of Commerce directories, prior survey contacts, contractor associations and collective bargaining units. The Division also sends out survey packets. The Division requires evidence of wages *actually paid* for hours worked and rejects averages and estimates. The Division takes the highest number of hours worked at a given rate to be the prevailing rate. The reported wage rates showed that 8,801.25 hours were worked by plumbers at the rate of $16.00 per hour; the next category was far smaller showing 3,313.5 hours worked at a wage rate of $12.50 per hour.

In contrast, witnesses for Local 35 presented evidence regarding the hours worked under the agreement between the Plumbing Contractors Association of Metropolitan St. Louis and Journeymen Plumbers Local Union Number 35 of St. Louis, Missouri. The agreement establishes a rate for journeymen at $21.355 per hour with a fringe benefit package of $8.32 (which includes a $.20 contribution to the Industry Council Fund). The agreement allowed for the payment of wages at less than scale when there was

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

2. The reference to the agreement in the briefs is not specific. Only part of the agreement is included in the record. The record includes only the odd numbered pages. We base our knowledge of the provision in question on testimony and on various documents referring to the provision.

competition from non-union contractors paying the $16.00 per hour rate. There was testimony that the rates were negotiated to try to procure work as "we were working under our collective bargaining agreement against the $16 and no fringe."

On May 24, 1994, the Commission entered its order. The Commission, through a majority composed of Chairman Henry A. Panethiere and Philip M. Barry, determined the prevailing wage rate to be $22.26 per hour. The Commission majority calculated the wage rate pursuant to the formula provided by Local 35. The Commission considered all the hours worked by union plumbers collectively despite the fact that these union plumbers worked at different rates. In aggregating the union plumbers together, the number of hours worked exceeded the total hours considered by the Division in setting the prevailing wage rate.

Commissioner Robert Thane Johnson dissented, arguing that the Division had correctly calculated the prevailing wage rate. He argued that the decision of the Commission unlawfully favors unions, and discriminates against non-union workers.

On June 14, Central Missouri Plumbing Company filed a petition for review with the Circuit Court of Cole County, complaining, among other things, that the Commission violated the Prevailing Wage Statute. Heart of America Chapter of Associated Builders and Contractors, Inc. filed a petition for review on June 23, 1994. Local 35 filed a motion to intervene. One of the contentions of Central Missouri Plumbing was that Commissioner Barry should have recused himself because of the position he then occupied as President of Local 35, which had objected to the Division's wage rate, causing the matter to be heard by the Labor and Industrial Relations Commission.

The circuit court rendered its decision on December 9, 1994. It reversed the order of the Commission. The court made the following findings:

1. The Commission was required to apply the mode method of calculation in establishing the prevailing wage rate for plumbers in Cole County. . . . Instead of applying the mode method of calculation, which identifies the wage rate most often paid in the locality, the Commission set the prevailing wage rate for plumbers at $22.26 per hour, a rate that was never actually paid at any time for any plumbing work in Cole County. Accordingly, the method used by the Commission to set the prevailing rate of wages was not authorized by and violated § 290.210 R.S.Mo., *et seq.*;

2. The method used by the Commission to determine a wage rate was also arbitrary, capricious and discriminatory because it aggregated all hours worked pursuant to Plumbers Local No. 35 collective bargaining agreement, and treated them as though they had all been worked at the same hourly rate, even though those hours were worked at varying hours of pay but failed to aggregate the hours of merit shop contractors not worked pursuant to that collective bargaining agreement. By setting the prevailing wage in this manner, the Commission established a prevailing rate of wages that had never been paid in the locality; and

3. At all times material to this matter Commissioner Barry served as President of Plumbers Local No. 35, a party to the proceedings before the Commission, and as a member of the Commission. Since Commissioner Barry had a relationship with a party to the proceedings and an interest in the outcome of the proceedings, he was disqualified from serving as an adjudicator and he should have recused himself from the proceedings before the Commission. His participation as Commissioner renders the Order of the Commission void. The "rule of necessity" has no applicability here because Commissioner Barry's recusal would not have deprived the Commission of a quorum. (Citation omitted).

The trial court ordered that the prevailing wage be set at $16.00 per hour; that the Commission not count or utilize hours worked by plumbers on public projects at the rate of $22.26 in any prevailing wage rate determination of the Division or the Commission; and that Commissioner Barry recuse himself from any and all further proceedings involving the Commission's Order and the Division's Wage Order.

Local 35 appeals, claiming that the trial court erred by (1) finding Commissioner Barry to be disqualified; (2) rejecting Local 35's argument that the Rule of Necessity applied to Commissioner Barry's participation in the proceedings; (3) finding that the Commission's determination of the prevailing wage was not authorized by law; and (4) directing that the Commission not utilize the $22.26 wage rate in any prevailing wage determination.

The judgment of the circuit court is affirmed in all respects.

### Standard of Review

■ Although this appeal is taken from the circuit court, our review is of the decision of the administrative agency, not the decision of the circuit court. *Taylor v. Missouri State Bd. of Accountancy,* 880 S.W.2d 360, 361 (Mo.App.1994). We review the agency's decision to ascertain whether it is supported by competent and substantial evidence upon the record as a whole. *Fritzshall v. Board of Police Comm'rs,* 886 S.W.2d 20, 23 (Mo.App. 1994). We will reverse the agency's findings should it be determined that the decision is not supported by competent and substantial evidence, or if it constitutes an abuse of discretion, is arbitrary or capricious, or is unauthorized by law. *Id.* Decisions of an agency pertaining to the interpretation or the application of law, in contrast to factual determinations, are not binding on this court. *White v. Dallas & Mavis Forwarding Co.,* 857 S.W.2d 278, 280 (Mo.App.1993). When our review concerns a question of law, we exercise unrestricted, independent judgment and are obliged to rectify erroneous interpretations of law. *Branson R–IV School Dist. v. Labor & Industrial Relations Comm'n,* 888 S.W.2d 717, 720 (Mo.App.1994).

### Disqualification of Commissioner Barry

■ Local 35 challenges the trial court's determination that Commissioner Barry was disqualified to serve on the Commission in this matter and should have recused himself because of his position as President of Local 35. Commissioner Barry is a journeyman plumber. He has been a member of Local 35 for thirty-five years and is President, the third highest position in the organization, having served as President since 1985. According to the Constitution and By-law of Local 35:

> The President shall preside over all meetings and conduct the same in conformity with Roberts Rules of Order as amended. He shall have a general supervisory control over all matters pertaining to the welfare of the Local Union. The President shall be ex-officio over all committees.

Commissioner Barry has received no direct compensation from Local 35 since his appointment to the Commission. His position as President exempts him from paying dues, and his expenses are paid to attend conventions of the International Union. These items do not constitute a showing of direct financial benefit which is related to the success of the union's position in this wage determination matter.

Local 35 claims that because Commissioner Barry had no direct financial benefit in the proceedings as defined by § 105.452(4), he was not disqualified from participating in the these proceedings. The statute referred to by Local 35, § 105.452(4) provides:

> No elected or appointed official or employee of the state or any political subdivision thereof shall:
>
>    *    *    *    *    *    *
>
> (4) Favorably act on any matter that is so specifically designed so as to provide a special monetary benefit to such official or his spouse or dependent children, including but not limited to increases in retirement benefits, whether received from the state of Missouri or any third party by reason of such act. For the purposes of this subdivision, **special monetary benefit** means being materially affected in a substantially different manner or degree than the manner or degree in which the public in general will be affected or, if the matter affects only a special class of persons, then affected in a substantially different manner or degree than the manner or degree in which such class will be affected....

(Emphasis added.) We agree that Commissioner Barry did not receive any "special monetary benefit" from the wage determina-

tion, and that this statute did not require his disqualification from participation. We also acknowledge that the employees' representative on the Commission is to be "one member, who on account of his previous vocation, employment, affiliation or interests shall be classified as a representative of employees. . . ." Clearly, the idea is to have a Commission member who, in contrast to the point of view of management, will represent the point of view of working people. The statute does not contemplate, however, that an officer of a *party* to a proceeding before the Commission will also participate as a Commissioner in deciding the quasi-judicial matters before the Commission. Section 105.452(4) is not the sole determinant of whether or not a conflict of interest exists to disqualify a person from participating as a decision maker in a proceeding like the one under review. Section 105.476, provides that "[n]othing in sections 105.450 to 105.498 shall be interpreted as exempting any individual from applicable provisions of any other laws of this state. . . ."

In *Union Elec. Co. v. Public Serv. Comm'n,* 591 S.W.2d 134 (Mo.App.1979), this court considered a writ of prohibition seeking to prohibit a member of the Public Service Commission from participating in a rate design proceeding because she was a party in the case. In discussing the standards applicable to the case, it was pointed out that, "the courts in this state have held officials occupying quasi-judicial positions to the same high standard as apply to judicial officers by insisting that such officials be free of any interest in the matter to be considered by them." *Id.* at 137. This court held that members of the Public Service Commission may not act in matters pending before them if they have an interest in the matter, are prejudiced, or occupy the status of party. *Id.* at 139. The reasoning behind such holding was straightforward:

> To hold that a member of the Commission may not be disqualified for participating in a case in which that member is shown to be interested, biased, prejudiced or a party would be to deprive most of the citizens of this state of one of the most cherished attributes of our system of justice—to have his cause determined by a fair and impar-

tial official. This right does not depend upon the legislature providing a procedure for the disqualification of a member of the Commission, rather it is woven into the very fabric of our system of justice. . . . Thus, whether it be placed on the grounds of common law or due process, every party is entitled to have his case considered by a public service commission consisting only of persons who are not interested or prejudiced in the cause and who are not parties to the cause. . . .

*Id.* The Commissioners of the Labor and Industrial Relations Commission, like the members of the Public Service Commission, occupy quasi-judicial positions. Each one is to bring a particular perspective, representative of a particular constituency, to the Commissioner's determination. But all of them must also, as quasi-judicial officers, strive to conscientiously apply the law. The Commissioners are to uphold the Constitution and laws of the state, pursuing a just and conscientious result in accordance with law. Commissioner Barry, as President of Local 35, was intimately involved in its affairs and its direction, and would be perceived as likely to have great difficulty bringing an open mind to the issue of how the statute should be applied. His position as President was tantamount to being a party himself. It is a maxim of common law, the wisdom and propriety of which will not be questioned, that "no one should be a judge in his own cause." *State ex rel. Sansone v. Wofford,* 111 Mo. 526, 20 S.W. 236 (1892). There is no indication that either the Division of Labor Standards, Central Missouri Plumbing, or the Heart of America Chapter of Associated Builders (the last two of which had intervened) were aware of Commissioner Barry's involvement in leadership of Local 35. In the Circuit Court, and in this court, those opposing the Commission's order maintain that they would have objected had they known of Commissioner Barry's status with the union, and it is reasonable to conclude that they would have. We conclude that Commissioner Barry should have disclosed his leadership position in Local 35, and either disqualified himself or obtained the consent

of the Division and the intervenors to participate as a Commissioner.

## Mootness

By the time this case was argued on this appeal, Commissioner Barry was no longer serving as President of Local 35. Also, the Division of Labor Standards issued a new wage order in 1995. However, such facts do not moot the issue on appeal because the issue is capable of repetition, and yet likely to evade review, if the doctrine of mootness is invoked. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). We also are uncertain whether the trial court's order to exclude wages paid at the $22.26 hourly rate in future wage rate determinations remains pertinent for future calculations. It is possible that construction projects which were begun under the 1994 Commission order ($22.26 per hour) are still continuing, meaning that such wage rates may be included in the 1995 or 1996 wage determinations. Thus, without a clear showing of mootness, we conclude it is proper to proceed to the merits of the issue of the duty of the Commissioner to disclose his direct interest.

## The Rule of Necessity

■ Local 35 argues that Commissioner Barry's participation was required by the Rule of Necessity because his participation was necessary to constitute a quorum. Local 35 relies upon *Barker v. Secretary of State's Office*, 752 S.W.2d 437 (Mo.App.1988), in support of its position. However, Local 35's reliance upon *Barker* is misplaced. Commissioner Barry's participation in the proceedings was not required for a quorum, because two Commissioners are sufficient for a quorum. Section 286.010 RSMo 1994. Moreover, Commissioner Barry did not stay out of the proceeding until a stalemate had developed. In *Barker*, a member of the Commission had served as counsel for the employer and the insurer in a case involving a Workers' Compensation claim. *Id.* at 439. The Commissioner disqualified herself from participation, and did not participate in the case until the other two commissioners had reached a stalemate. *Id.* This court held that the Rule of Necessity applied. The Rule of Necessity is a doctrine that allows a person to be a judge in a case in which he or she has an interest where there is no other mechanism for a substitute judge. *Id.*

Unlike the commissioner in *Barker*, Commissioner Barry did not disclose his interest in the case. Nor did Commissioner Barry step in to provide a quorum or to break a stalemate. Local 35 points out that for a decision to be valid it must be agreed upon by a majority of two members and that the decisions of Commissioner Johnson and Chairman Panethiere were in conflict. Because Commissioner Barry participated in the proceedings from the outset, and had an opportunity to influence his fellow commissioners, we cannot bootstrap the justification for his participation *ab initio* by assuming there would have been a deadlock anyway. The trial court was entitled to indulge the presumption that the participation of Commissioner Barry "infected" the entire panel. *State ex rel. Brown v. City of O'Fallon*, 728 S.W.2d 595, 597 (Mo.App.1987). There is no way to measure how the proceedings were influenced by Commissioner Barry's involvement.

## Method of Calculation

■ Section 290.250 requires the Department of Labor and Industrial Relations to "determine the prevailing hourly rate of wages" paid to workers on public works projects in Missouri. The "prevailing hourly rate of wages" is defined in § 290.210(5) as "the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character...." The method used to calculate the wage is the mode method of statistical analysis. As the court in *Branson* explains, the prevailing wage, calculated by using a modal approach, is the most frequently paid actual wage for a person in a given trade. *Branson*, 888 S.W.2d at 720. This method necessarily corresponds to the definition of "prevailing hourly rate of wages" because the basis for the determination of the rate is the greatest number of hours actually worked. The court in *Branson* approved this method holding that:

Without question, the phrase "rates that are paid" means the rates that are "actual-

ly" paid and not some average wage rate or other derivative figure. Identifying a prevailing wage rate (i.e., the most common or prevalent) from among wages actually paid in a locality leads inexorably to a prevailing wage rate that matches one of these wages actually being paid.

*Branson,* 888 S.W.2d at 724.

The method used by the Commission in the instant case is unauthorized by law. The Commission's rate of $22.26 was not an actual wage rate that workers received in the locality. The record shows that 8,801.25 hours were worked at a rate of $16.00 per hour. This was the proper wage rate to use in setting the wage rate for public works projects. Local 35 points out that § 290.262.1 requires that, "[i]n determining prevailing rates, the department shall ascertain and consider the applicable wage rates established by collective bargaining agreements, if any...." Local 35 also relies upon *Woodman Engineering v. Butler,* 442 S.W.2d 83 (Mo.App.1969). *Woodman* states simply that the Commission is required to consider wages paid under such agreements. The purpose of this phrase is to eliminate the argument that wages paid under a collective bargaining agreement should be excluded. The statute does not, however, direct that rates utilized in collective bargaining agreements be adopted as the prevailing wage. In *United Bhd. of Carpenters & Joiners of America v. Industrial Comm'n,* 363 S.W.2d 82 (Mo.App.1962), the court examined a challenge to the Commission's determination of the prevailing hourly wage rate for carpenters. In addressing the issue of collective bargaining agreements, the court pointed out:

> [T]he statute requires only that the Commission "consider" such agreements, if any, as to whether such rates are the prevailing rates in the locality. It does not require the Commission to *follow* or *adopt* the rates so stipulated if not found to be the prevailing rates for such services.

*Id.* at 90. In the instant case, it is clear that the rate established by the Commission in its use of the collective bargaining agreement was not the prevailing rate since the rate was not an actual rate, but an artificial one based upon a contorted formula using figures out of the collective bargaining agreement. The use of this contrived formula was arbitrary. Even had the aggregation of hours at an artificial wage been proper, there is no way to justify the notion that hours worked by union members should be aggregated but not those hours worked by nonunion laborers.

Local 35 takes issue with the trial court's order that, "The Commission shall not count or utilize in any manner hours worked on public projects by plumbers in Cole County that were paid at the $22.26 an hour rate established by the Commission in its Order of May 24, 1994, in any prevailing wage rate determination of the Division or the Commission." Local 35 complains that the trial court's order is in excess of its jurisdiction because it restricts future conduct of the Commission and dictates the way wage rates for plumbers will be determined in conflict with statutory wage law. We disagree.

Section 536.140 defines the scope of judicial review of an administrative determination. The reviewing court is directed to:

> [R]ender judgment affirming, reversing, or modifying the agency's order, and may order the reconsideration of the case in the light of the court's opinion and judgment, and may order the agency to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in the agency.

The circuit court's order is proper because any consideration of the rate established by the unlawful action of the Commission would perpetuate the unlawful rate. The circuit court's directive is precisely tailored to prevent such injustice from occurring. We note that the circuit court did not say that *any* hourly rate of $22.26 was eliminated from the calculation of the rate. Had this been the directive, the circuit court would have indeed exceeded its jurisdiction. It is only the hourly rate of $22.26 for public projects *established by the Commission's unlawful action* that is not to be used in the calculation of the wage rate. Such action is proper.

The order of the trial court is affirmed in all respects.

All concur.