**HTH COMPANIES, INC., Appellant,**

**Heart of America Chapter of Associated Builders and Contractors, Intervenor/Appellant,**

v.

**MISSOURI LABOR AND INDUSTRIAL RELATIONS COMMISSION, Respondent,**

**Division of Labor Standards, Intervenor/Respondent.**

**No. WD 56319.**

Missouri Court of Appeals, Western District.

June 15, 1999.

Richard M. Paul, III, Kansas City, for HTH Companies

Terry C. Allen, for Heart of America Chapter of Associated Builders and Contractors.

John B. Keller, Jefferson City, for Missouri Labor and Industrial Relations Com'n.

David Meyer, Jefferson, City, for intervenor-respondent.

Before Presiding Judge JAMES M. SMART, Jr., Judge FOREST W. HANNA and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellants hth and Heart of America Chapter of Associated Builders & Contractors (hereinafter collectively referred to as hth) appeal the decision of the Missouri Labor and Industrial Relations Commission (the Commission) overruling their challenge to an Annual Wage Order established by the Division of Labor Standards (the Division). Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 1997, the Division issued its Annual Wage Order No. 4, establishing the hourly rate of pay for asbestos workers in several Missouri counties when working on public construction projects. The Division set the prevailing wage rate for asbestos workers at $25.46 per hour.

On April 7, 1997, hth filed objections to Annual Wage Order No. 4 with the Commission, claiming the Division failed to follow Missouri law for establishing the prevailing wage rate in Audrain and Boone Counties because it improperly aggregated two union wages paid in those counties. Second, hth argued, the Division improper-

ly recorded as being paid at the regular union rate work in Audrain and Boone Counties that was actually done at apprentice or foreman rates, and that the payroll records it submitted to the Division so showing were more accurate than the contractors' reports relied on by the Division. The unions presented evidence that the contractors' reports it relied on were accurate except in very minor respects, and that hth's own reports that it had paid only $11 per hour were inaccurate because they failed to include fringe benefits also paid by hth.

Third, hth argued that the Division improperly failed to consider rates actually paid in neighboring counties or localities in setting the prevailing wage rates for Adair, Monroe, Montgomery and Shelby counties. It argued that it should have done so where, as here, evidence showed that no work of this type had been performed in these counties themselves in the relevant time period, rather than unilaterally adopting as the prevailing wage the collectively bargained rate of pay for this locality.

Following a hearing, on June 18, 1997, the Commission issued its order adopting the findings and prevailing wage rates established by the Division. Hth filed a petition for judicial review in the circuit court, in which Heart of America joined as an intervening party. The circuit court summarily affirmed the Commission's order. Hth and Heart of American now appeal.

## II. STANDARD OF REVIEW

██ We review the decision of the administrative agency, not that of the circuit court. *Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 230 (Mo.App. 1996), *citing, Ogden v. Henry*, 872 S.W.2d 608, 611 (Mo.App.1994). We defer to the agency's findings of fact and will uphold its decision unless we find the decision "is in excess of jurisdiction, unsupported by competent and substantial evidence, or is arbitrary, capricious, or unreasonable." *Id.* In

reaching our decision, we consider the evidence in the light most favorable to the agency's decision. *SGOH Acquisition, Inc. v. Mo. Dep't of Mental Health,* 914 S.W.2d 402, 404 (Mo.App.1996).

### III. CONSIDERATION OF INCREMENTAL INCREASE IN UNION RATES AND OTHER RATES IN SETTING PREVAILING WAGE IN AUDRAIN AND BOONE COUNTIES

Hth argues that the Commission's order as to the prevailing wage in Audrain and Boone counties must be reversed because (1) the Commission improperly combined different rates of pay from union collective bargaining agreements to form a single rate in violation of Section 290.210(5),[1] and (2) the Commission's prevailing wage determination is not supported by substantial and competent evidence in that it is based on inaccurate contractors' reports rather than on the more accurate payroll records submitted by hth.

Section 290.250 requires the Department of Labor and Industrial Relations to determine once each year the prevailing hourly rate of wages paid to each occupational title of work in each county in Missouri. The "prevailing hourly rate of wages" is defined in Section 290.210(5) as "the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of similar character including the basic hourly rate of pay" and any contributions made by the employer for other "fringe benefits". In determining the prevailing rate, Section 290.260 requires that the department "shall ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and the rates that are paid generally within the locality...." Further, Section 290.262.9 states in relevant part:

The prevailing wage for each such occupational title may be adjusted on the anniversary date of any collective bargaining agreement which covers all persons in that particular occupational title in the locality in accordance with any annual incremental wage increases set in the collective bargaining agreement. § 290.262.9.

The method used to calculate the prevailing wage under these sections is the "mode" method of statistical analysis. An analyst seeking to determine what number is the mode determines what number is the most frequently occurring in a certain classification of numeric results, rather than the average or mean number. As applied to salaries, this would require the statistician to determine which salary was most frequently paid. *Branson R–IV Sch. Dist. v. Labor & Indus.,* 888 S.W.2d 717, 720 (Mo.App.1994).

For example, as explained in *Branson,* assume wages earned for a particular trade within a certain locality varied from $10 per hour to $15 per hour. Assume further that 30 percent of all hours were paid at $10 per hour, that 50 percent of all hours were paid at $12 per hour, and that 20 percent of all hours were paid at $15 per hour. In that case, the mode wage would be $12 per hour, as it was the most frequently paid actual wage for a person in the trade. Under the above statutes, because the $12 hourly wage was the mode, it would be adopted by the Division as the prevailing wage for that year for that classification. *Id.* at 720.

In the present case, the Commission affirmed the prevailing wage determinations made by the Division which set the rates in Audrain and Boone Counties as the collectively bargained rate of $25.46 per hour for asbestos workers. The Division had determined that this rate was the most commonly paid rate by looking at contractors' reports which showed the amount of hours worked at various rates of pay in each of the two counties. These records showed that 781 hours were worked in Audrain County at $25.11 per hour and that, after an incremental wage

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

increase pursuant to a collective bargaining agreement, 336 hours were worked at $25.46 per hour. The Division ruled that, under Section 290.262.9, these two sets of hours should be combined, and thus recorded a total of 1117 hours worked at the collectively bargained rate of $25.46 per hour. Hth paid 1113.5 hours at $11 per hour (not considering the value of health insurance benefits provided). Reviewing these figures, the Division found that $25.46 per hour was the mode wage, and set it as the prevailing wage for the year.

■■■ Hth argues that in determining the prevailing rate, the Division, and later the Commission, erred in aggregating the collectively bargained wage rate of $25.11 per hour before the incremental rate increase went into effect, with the collectively bargained wage rate of $25.46 per hour after the incremental rate increase went into effect.[2] Hth says that each rate paid within a particular locality must be considered completely separate and independent from all other rates paid for the same work, even if the change in rate is the result of a collectively bargained incremental wage increase occurring during the course of the year, citing *Central Missouri Plumbing v. Plumbers Local 35*, 908 S.W.2d 366, 371 (Mo.App.1995).

We do not agree that the principles from *Central Missouri Plumbing* relied on by hth are dispositive here. In that case, the Commission calculated the prevailing wage rate by dividing the total wages paid to union workers by the number of hours for which they were paid. In so doing, it considered all paid union wages, even though these wages were paid at a wide variety of rates. It then said the resulting average salary would be the prevailing wage, even though, in fact, no person actually had been paid that specific sum. In this circumstance, the court properly found

that the Commission had failed to use the mode method for determining the prevailing wage rate, and instead had created an artificial rate based upon a contorted formula using averaged figures out of the collective bargaining agreement. The court then went on to say that, even had the aggregation of hours at an artificial wage been proper, there was no way to justify the notion that hours worked by union members should be aggregated but not those hours worked by nonunion laborers. *Id.* at 372.

Hth argues that the Commission committed the same error here that was condemned in *Central Missouri Plumbing* when it combined the hours worked at the initial collectively bargained rate of $25.11 with the hours worked at the incrementally increased rate of $25.46. While it recognizes that Section 290.262.9 permits the prevailing wage to be adjusted upward once during the year in accordance with incremental increases under collectively bargained agreements, it says that these two rates must still be considered separately when determining which wage was paid most often.

We disagree. The effect of requiring adjustment of the prevailing wage upward when an incremental wage increase goes into effect pursuant to a collective bargaining agreement is to treat the hours worked at those two rates during the pendency of the agreement the same, and to treat them as being worked at the incremental rate. Other union rates are *not* aggregated, only the initial and incremental rate for the same work. This is necessary in order to give effect to the collectively bargained incremental wage increase, as required by Section 290.262.9. To then separate back out the hours worked before and after the increase

---

**2.** Hth also argues that, because the statute says that the collective bargaining agreement must cover all persons in the locality working in that particular occupational title, it means that any incremental wage increase will not be included in the prevailing wage if there is any non-union worker in the locality. We

disagree. It is evident from the purpose and language of the statute that it simply requires that all union workers in the locality must be working under the collective bargaining agreement before the incremental wage increase in that agreement will be automatically included in the prevailing wage.

would be contrary to the clear intent of the statute not to penalize the workers for having received an incremental wage increase, for it would result in the collectively bargained rate which prevailed one year not being the prevailing rate the subsequent year because it would be artificially divided into a before-increase rate and an after-increase rate, contrary to the statute intendment. This would be error. The statute says that when a bargained-for increment goes into effect, all hours worked for the year are to be considered as worked at the new incremental rate. That unified rate is therefore the one which must logically be used in determining whether the bargained-for rate or a non-union rate was the most commonly paid, and thus will be the prevailing rate for the subsequent year. To do otherwise would negate the purpose of Section 290.262.9 and the requirement under section 290.260.1 that, in determining the prevailing wage, the department shall consider the applicable wage established in collective bargaining agreements.

■ Hth also argues that, even if the Commission were permitted to aggregate the pre- and post-incremental increase rates for a specific position, as it did here, it was not permitted to aggregate those rates with apprentice or foreman rates in determining the prevailing wage, and that it did this by relying on contractors' reports as to hours worked, since those reports improperly reported apprentice and foreman hours with regular hours worked. It says the Commission should instead have used the payroll records, and those records show fewer hours worked at the collectively bargained rate than worked at hth's $11 per hour rate.

The decision of the Commission must be supported by competent and substantial evidence upon the whole record. *Woodman Engineering Co. v. Butler*, 442 S.W.2d 83, 88 (Mo.App.1969). We only look to whether the Commission could reasonably have made its findings and reached its results upon consideration of all the evidence before it. Only a decision which is clearly contrary to the evidence should be set aside. *Id.*

■ It was up to the Commission to determine what evidence to believe, and what evidence to disbelieve. The Commission considered hth's claims in detail, considered the reports in detail, and determined that the contractors' reports were accurate with a few minor exceptions which did not affect the result of its determination. The Commission also found that some of hth's reports were not accurate, particularly in regard to its failure to include the value of health care benefits as required by statute. The Commission must make its decision on the evidence presented to it, even if it would prefer more detailed or precise evidence. That is what it did here. We cannot say that this determination is clearly contrary to the evidence. *Woodman*, 442 S.W.2d at 88.

## IV. SETTING RATE WHEN NO WORKERS IN LOCALITY

■ The appellants argue that the Commission's decision must be reversed because it acted in an arbitrary manner when it calculated the prevailing wage rate in Adair, Monroe, Montgomery and Shelby Counties as being the collective bargaining rate, even though no hours were actually worked or wages actually paid in these counties based on the collectively bargained rates. Hth asserts that collectively bargained rates can only be considered in counties where there are reports of wages actually paid and argues instead that the prevailing wage rates for counties where no actual wages are paid should be determined by looking to the rates paid in adjacent counties in accordance with Section 290.210(3).

Section 290.210(3) states in relevant part:

> ... [I]f there is not available in the county a sufficient number of competent skilled workmen to construct the public works efficiently and properly, "locality" may include two or more counties adjacent to the one in which the work or

construction is to be performed and from which such workers may be obtained in sufficient numbers to perform the work . . .

Hth asserts that it is undisputed that no asbestos workers in Adair, Monroe, Montgomery and Shelby Counties actually performed work or were actually paid for work in the past year, and, thus, the above statute applies directing the wage determination by reference to wages paid in adjacent localities. As the Commission notes, however, there was no evidence that there were an insufficient number of competent skilled workers in the four counties to construct public works properly and efficiently for the coming year. The evidence simply showed that no asbestos workers were utilized on projects in those counties the prior year. Section 290.210(3) therefore does not authorize reference to the wages paid in adjacent counties in determining the wage rate for these counties.

This does not leave the Commission with no guidance in setting rates, however. Section 290.260.1 states that in determining the prevailing wage rate, the department shall consider rates generally paid in the county *and,* "the rates established by collectively bargained agreements, if any." *Id.* Here, while the evidence shows that no wages were paid for that job in the county, there was a collectively bargained agreement. By its terms, therefore, the statute states that the prevailing wage should be set by reference to the collectively bargained agreement. In fact, we so noted in *dicta* in *Branson* itself, stating:

> [T]he only time the [Commission] bases its prevailing wage rate determinations on something other than a wage rate actually paid is when no evidence of actual wage rates is presented. In those situations, the [Commission] bases its determination on the collective bargaining agreement in the locality.

*Branson,* 888 S.W.2d at 724, n. 9. We restated this interpretation of the statute recently in *dicta* in *Heavy Constructors Assoc. v. Div. of Labor and Indus. Relations,* 993 S.W.2d 569 (Mo.App. W.D.1999),

stating, "if there is no evidence of wage rates paid in a county for an occupational title, then applicable collective bargaining agreements are used to establish that rate." *Id.,* at 571. We formally adopt this interpretation of the statute here.

For these reasons, we affirm the decision of the Commission.

Presiding Judge JAMES M. SMART and Judge FOREST W. HANNA, concur.